LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

GREGORIO VELASCO AVILA,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class*,

            Plaintiff,

      **v.**

ARDIAN CORP.
d/b/a TAVERNA KYCLADES,
MACCG LLC
d/b/a TAVERNA KYCLADES,
TK BELL LLC
d/b/a TAVERNA KYCLADES,
ARDIAN SKENDERI
and CATERINA SKENDERI,

            Defendants.

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff, GREGORIO VELASCO AVILA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, ARDIAN CORP. d/b/a TAVERNA KYCLADES, MACCG LLC d/b/a TAVERNA KYCLADES, TK BELL LLC d/b/a TAVERNA KYCLADES, ("Corporate Defendants"), ARDIAN SKENDERI and CATERINA SKENDERI

1

(collectively, "Individual Defendants," and together with Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid minimum wages resulting from an invalid tip credit, (2) unpaid overtime compensation, (3) unpaid regular and overtime wages due to an impermissible policy of rounding down daily hours worked, (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid minimum wage due to an invalid tip credit, (2) unpaid overtime compensation, (3) unpaid regular and overtime wages due to an impermissible policy of rounding down daily hours worked, (4) unpaid spread-of-hours premium, (5) statutory penalties, (6) liquidated damages and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff GREGORIO VELASCO AVILA is a resident of Queens County, New York.

6.      Defendants operate an enterprise comprised of three Greek restaurants under the common trade name "Taverna Kyclades" at the following locations:

(a)    Astoria Location –  33-07 Ditmars Boulevard, Astoria, New York 11105;

(b)    East Village Location – 228 First Avenue, New York, New York 10009; and

(c)    Bayside Location – 3930 Bell Blvd, Bayside, New York 11361.

(collectively "Taverna Kyclades Restaurants").

7.    Taverna Kyclades Restaurants operate as a single integrated enterprise. They are engaged in related activities, share common ownership and have a common business purpose.

(a) The Defendants share common management and ownership. The Individual Defendants ARDIAN SKENDERI  and CATERINA SKENDERI are the owners of the three Corporate Defendants.

(b) The Taverna Kyclades Restaurants are advertised and marketed jointly as a common enterprise on Defendants' website: http://www.tavernakyclades.com On their website's homepage, they expressly refer to  Taverna Kyclades in Astoria as the "flagship restaurant serving Mediterranea cuisine with the freshest Greek ingredients." The webpage also states that East Village Location "serves a home cooked meal that whisks you away to the sea side of the Kyclades." Finally, it advertises the Bayside Location as the "latest edition to the TK family" that provides "excellent service and cuisine"  (*See Exhibit A* – *The Homepage of Defendants' Website*.)

(c) On  Defendants' website, users can access the menu sections for all three restaurant locations.  (*See Exhibit B* – *The Menu Pages for the three locations on Defendants' Website*.)

(d) Defendants implement the same employment policies and practices across the three Taverna Kyclades Restaurants. All Taverna Kyclades Restaurants use the same centralized payroll system.

(e) Although Plaintiff did not work at all of Defendants' Restaurants, they are appropriately named in this Complaint through the relevant Corporate Defendants. Because the Restaurantss share identical illegal wage and hour policies, they (and the relevant Corporate Defendants) are properly named on the basis of their outstanding liability to the Class members for whom Plaintiff seeks to represent.

8. Corporate Defendants:

(a) Corporate Defendant ARDIAN CORP. d/b/a TAVERNA KYCLADES is a domestic business corporation organized under the laws of the State of New York, with a principle place of business and an address for service of process located at 33-07 Ditmars Boulevard, Astoria, New York, New York 11105. Defendants operate the "Taverna Kyclades" restaurant located in Astoria through ARDIAN CORP.

(b) Corporate Defendant MACCG LLC d/b/a TAVERNA KYCLADES is a domestic business corporation organized under the laws of the State of New York, with a principle place of business located at 228 First Avenue, New York, New York 10009 and an address for service of process located at 400 East 14th Street, New York, New York 10009. Defendants operate the "Taverna Kyclades" restaurant located in East Village through MACCG LLC.

(c) Corporate Defendant TK BELL LLC d/b/a TAVERNA KYCLADES is a domestic business corporation organized under the laws of the State of New York, with a

4

principle place of business located at 3930 Bell Boulevard Bayside, NY 11361 and an address for service of process located at 251-62 Gaskell Road Little Neck, New York 11362. Defendants operate the "Taverna Kyclades" restaurant located in Bayside through TK BELL LLC.

9.    Individual Defendants:

(d)    Individual Defendant ARDIAN SKENDERI  is an owner of each of Corporate Defendants, ARDIAN CORP. d/b/a TAVERNA KYCLADES, MACCG LLC d/b/a TAVERNA KYCLADES, and TK BELL LLC d/b/a TAVERNA KYCLADES. ARDIAN SKENDERI  exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. ARDIAN SKENDERI  had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to ARDIAN SKENDERI regarding any of the terms of their employment, and ARDIAN SKENDERI  would have the authority to effect any changes to the quality and terms of employees' employment. ARDIAN SKENDERI  regularly visited the restaurant and directly reprimanded any employee who did not perform his duties correctly. ARDIAN SKENDERI  ensured that employees effectively serve customers and that the business is operating efficiently and profitably. ARDIAN SKENDERI exercised functional control over the business and financial operations of each of Corporate Defendants, ARDIAN CORP. d/b/a TAVERNA KYCLADES, MACCG LLC d/b/a TAVERNA KYCLADES, and TK BELL LLC d/b/a TAVERNA KYCLADES.

(e)    Individual Defendant CATERINA SKENDERI is an owner of each of Corporate Defendants, ARDIAN CORP. d/b/a TAVERNA KYCLADES, MACCG LLC d/b/a TAVERNA KYCLADES, and TK BELL LLC d/b/a TAVERNA KYCLADES. CATERINA

SKENDERI exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. CATERINA SKENDERI had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to CATERINA SKENDERI regarding any of the terms of their employment, and CATERINA SKENDERI would have the authority to effect any changes to the quality and terms of employees' employment. CATERINA SKENDERI regularly visited the restaurant and directly reprimanded any employee who did not perform his duties correctly. CATERINA SKENDERI ensured that employees effectively serve customers and that the business is operating efficiently and profitably. CATERINA SKENDERI exercised functional control over the business and financial operations of each of Corporate Defendants, ARDIAN CORP. d/b/a TAVERNA KYCLADES, MACCG LLC d/b/a TAVERNA KYCLADES, and TK BELL LLC d/b/a TAVERNA KYCLADES.

10.     At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

11.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including cooks, food preparers, dishwashers, cashiers, hosts/hostesses, porters, bartenders, barbacks, servers, runners,

bussers and delivery persons, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

13.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime compensation at the rate of one and one-half times the regular hourly rate for work in excess of forty (40) hours per workweek, and an impermissible policy of rounding down hours worked. With regard to Plaintiff and a subgroup of FLSA Collective Plaintiffs who were tipped employees ("Tipped Subclass") (i.e. bartenders, barbacks, servers, bussers, runners and delivery persons), Defendants were not entitled to take any tip credits because they failed to meet statutory requirements under the FLSA. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

14.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

15.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including cooks, food preparers, dishwashers, cashiers, hosts/hostesses, porters, bartenders, barbacks, servers, runners, bussers

and delivery persons, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

16.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of servers, bussers, runners, bartenders, barbacks and delivery persons ("Tipped Subclass") who also number more than forty (40). Plaintiff GREGORIO VELASCO AVILA is a member of both the Class and the Tipped Subclass.

18.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay Class members the proper overtime compensation at the rate of one and one-half times the regular hourly rate for work in excess of forty (40) hours per workweek, (ii) failing to pay regular and overtime wages due to an impermissible policy of rounding down daily hours worked, (iii) failing to pay spread-

of-hours premium, (iv) failing to provide proper wage statements per requirements of the New York Labor Law, and (v) failing to provide proper wage and hour notices per requirements of the New York Labor Law. With regard to Plaintiff and the Tipped Subclass, Defendants were not entitled to take any tip credits because they failed to meet statutory requirements under the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

19.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

20.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation

claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)    Whether Defendants employed Plaintiff and Class members within the meaning of the New York law;

(b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c)     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class members for their work;

(d)     Whether Defendants properly notified Plaintiff and Class members of their regular hourly rate and overtime rate;

(e)     Whether Defendants paid Plaintiff and Class members the proper overtime compensation under the New York Labor Law;

(f)     Whether Defendants improperly paid Plaintiff and Class members on a fixed salary basis, when New York Labor Law requires that all non-exempt employees be paid on an hourly basis;

(g)     Whether Defendants instituted an unlawful policy of rounding down the daily hours worked by Plaintiff and Class Members, resulting in unpaid regular and overtime wages;

(h)     Whether Defendants paid Plaintiff and Tipped Subclass members the proper minimum wage under the New York Labor Law;

(i)     Whether Defendants provided proper notice to Plaintiff and Tipped Subclass members that Defendants were taking a tip credit;

(j)     Whether Defendants provided proper wage statements informing Plaintiff and Tipped Subclass members of the amount of tip credit taken for each payment period and other information required to be provided on wage statements;

(k)     Whether Defendants took the proper amount of tip credit allowance from Plaintiff and Tipped Subclass members under the New York Labor Law;

(l)     Whether Defendants required Plaintiff and Tipped Subclass members to perform non-tipped work for more than 20 percent of their workday;

(m)    Whether Defendants kept daily records of tips earned by Plaintiff and the Tipped Subclass members;

(n)    Whether Defendants paid Plaintiff and Class members the "spread of hours" premium as required by the New York Labor Law;

(o)    Whether Defendants provided proper wage statements to Plaintiff and Class members per requirements of the New York Labor Law; and

(p)    Whether Defendants provided proper wage and hour notices to Plaintiff and Class members per requirements of the New York Labor Law.

## STATEMENT OF FACTS

23.    In or about April 2009, Plaintiff GREGORIO VELASCO AVILA was hired by Defendants to work as a busboy for Defendants' "Taverna Kyclades" restaurant located at 33-07 Ditmars Boulevard, Astoria, New York 11105. Plaintiff's employment was terminated by Individual Defendant ARDIAN SKENDERI on May 28, 2017.

24.    During the employment of Plaintiff GREGORIO VELASCO AVILA, he worked over forty (40) hours per week. During Plaintiff GREGORIO VELASCO AVILA's employment by Defendants, he regularly worked shifts that exceeded ten (10) hours in length each workweek.

25.    From the beginning of his employment until in or about June 2016, Plaintiff GREGORIO VELASCO AVILA was scheduled to work double shifts each day. Plaintiff worked six (6) days per week from 11:00 a.m. to 1:30 a.m., with a one-hour lunch break separating the two shifts,, for a total of eighty-one (81) hours per week.

26.    From in or about June 2016 until the end of his employment in May 2017, Plaintiff worked the following regular hours: on Sundays and Mondays, Plaintiff worked double shifts from 12:00 p.m. to 1:30 a.m. with an one-hour lunch break separating the two shifts; on

Tuesdays, Wednesdays, Thursdays and Saturdays, Plaintiff worked from 5:00 p.m. to 1:30 a.m. Plaintiff therefore worked total of fifty-nine (59) hours per week. Plaintiff was never required to clock in or out from the beginning of his employment until in or about June 2016. Other FLSA Collective Plaintiffs and Class members were scheduled to work similar hours for Defendants, and were subject to similar policies to those applied to Plaintiff with respect to the time clock.

27.     From the beginning of his employment until in or about June 2016, Plaintiff GREGORIO VELASCO AVILA received his compensation on a fixed salary basis in cash, at a rate of $20.00 per shift, regardless of actual hours worked. There was never any agreement that Plaintiff's fixed salary was intended to cover his overtime compensation. Based on Plaintiff GREGORIO VELASCO AVILA's direct observations and conversations with other employees, other FLSA Collective Plaintiffs and Class members similarly received their compensation on a fixed salary basis during this period.

28.     From in or about June 2016 until in or about mid-February 2017, Plaintiff GREGORIO VELASCO AVILA received, in check, a base hourly rate of $9.00 per hour.

29.     From in or about mid-February 2017 until in or about early-March 2017, Plaintiff GREGORIO VELASCO AVILA received, in check, a base hourly rate of $11.00 per hour.

30.     From in or about early March 2017 until the end of Plaintiff GREGORIO VELASCO AVILA's employment, Defendants reduced Plaintiff's base hourly rate to $7.50 per hour. Based on Plaintiff GREGORIO VELASCO AVILA's direct observations and conversations with other employees, other Tipped Subclass members similary received their compensation on an hourly basis during this period.

31.     After the change in method of payment in June 2016, Defendants impermissibly rounded Plaintiff's and Tipped Subclass members' daily hours worked down to the quarter hour, resulting in a net underpayment of regular and overtime wages.

32.     At all relevant times, Defendants paid Plaintiff and Tipped Subclass members below the prevailing federal and New York State minimum wages in violation of the FLSA and NYLL.

33.     Plaintiff and Tipped Subclass members did not receive proper notice that Defendants were claiming a tip credit. In addition, Plaintiff and Tipped Subclass members did not receive any written or oral notice informing them that the tips they received must be retained by them except pursuant to a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received. Further, Defendants failed to provide proper wage statements informing Plaintiff and Tipped Subclass members of the amount of tip credit taken for each payment period.

34.     During his employment with Defendants, Plaintiff and the Tipped Subclass members were required to engage in various non-tipped activities, such as cleaning windows, preparing carpets, bringing ice if needed, sweeping and mopping the floor, and refilling the fridges with soda and beer, for two (2) hours or twenty percent (20%) or more of their workday. Based on Plaintiff's direct observations and conversations with other employees, Tipped Subclass members similarly spent at least two (2) hours or twenty percent (20%) of their workday performing such non-tipped activities.

35.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime compensation, in violation of the FLSA and NYLL.

36. At all times relevant, the workdays of Plaintiff and Class members regularly exceeded ten (10) hours per day. However, Defendants failed to pay Plaintiff and Class members the "spread of hours" premium as required by NYLL.

37. At no time during the relevant time periods did Defendants provide Plaintiff or Class members with proper wage and hour notices or wage statements as required by NYLL.

38. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Tipped Subclass members either the FLSA minimum wage or the New York State minimum wage. With regard to Tipped Subclass members, Defendants were not entitled to take any tip credits because they failed to meet statutory requirements under the FLSA and NYLL.

39. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked in excess of forty (40) hours per week.

40. Defendants willfully violated Plaintiff and Class members' rights by paying them on a fixed salary basis in violation of NYLL even though Plaintiff and Class members are non-exempt employees who must be paid on an hourly basis.

41. Defendants willfully violated Plaintiff and Class members' rights by implementing an impermissible rounding policy that resulted in underpayment of regular and overtime wages.

42. Defendants knowingly and willfully operated their business with a policy of not paying the spread-of-hours premium to Plaintiff and Class members in violation of the NYLL.

43.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class members in violation of the NYLL.

44.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class members, in violation of the NYLL.

45.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

46.     Plaintiff realleges and reavers Paragraphs 1 through 45 of this class and collective action Complaint as if fully set forth herein.

47.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

49.     At all relevant times, the Corporate Defendants had gross annual revenues in excess of $500,000.

50.     At all relevent times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and Tipped Subclass members for their hours worked.

51.     At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

52.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Tipped Subclass members at the statutory minimum wage when Defendants knew or should have known such was due.

53.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs at the the statutory overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

54.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

55.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

56.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wage and unpaid overtime compensation, plus an equal amount as liquidated damages.

57.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

58.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

59.     Plaintiff realleges and reavers Paragraphs 1 through 58 of this class and collective action Complaint as if fully set forth herein.

60.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

61.     Defendants knowingly and willfully violated Plaintiff's and Tipped Subclass members' rights by failing to pay them the minimum wage required by the New York Labor Law. As factually described above, Defendants were not entitled to any tip credits under NYLL with respect to the Tipped Subclass.

62.     Defendants knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

63.     Defendants knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay the spread-of-hours premium for each workday that exceeded ten (10) hours.

64.     Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class members, as required by New York Labor Law § 195(1).

65.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class members with every wage payment, as required by New York Labor Law § 195(3).

66.    Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid minimum wage, unpaid overtime compensation, unpaid spread-of-hours premium, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wage due under the FLSA and NYLL;

d.    An award of unpaid overtime compensation due under the FLSA and NYLL;

e.    An award of unpaid spread-of-hours due under the New York Labor Law;

f.    An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage and overtime compensation, pursuant to the FLSA;

h.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage, overtime compensation and spread-of-hours premium, pursuant to the NYLL;

i.    An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.    Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.    Designation of this action as a class action pursuant to F.R.C.P. 23;

l.    Designation of Plaintiff as Representative of the Class; and

m.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:    August 23, 2018          Respectfully submitted,
          New York, NY

                                   LEE LITIGATION GROUP, PLLC
                                   C.K. Lee (CL 4086)
                                   Anne Seelig (AS 3976)
                                   Taimur Alamgir (TA 9007)
                                   30 East 39th Street, Second Floor
                                   New York, NY 10016
                                   Tel.: (212) 465-1188
                                   Fax: (212) 465-1181
                                   *Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

                         By:    */s/ C.K. Lee*  _____
                                C.K. Lee, Esq.

**EXHIBIT A**



ASTORIA    EAST VILLAGE    BAYSIDE    CONTACT US    ABOUT US    +1 718-545-8666

## WELCOME TO TAVERNA KYCLADES ASTORIA

TK Astoria, our flagship restaurant serving Mediterranean cuisine with the freshest Greek ingredients, will transport you to the Greek islands that are its namesake. Dine in the warmth of simple décor and surround yourself with the feeling of never leaving home in this acclaimed Queens location.

Fresh fish and traditional Greek dishes prepared the old fashioned way and served by our TK family will give you gastronomic bliss.





ASTORIA    EAST VILLAGE    BAYSIDE    CONTACT US    ABOUT US    +1 212-432-0011

## WELCOME TO TAVERNA KYCLADES MANHATTAN

TK-Manhattan, conveniently located on the Northeast corner of 14th Street and 1st Avenue, serves a home cooked meal that whisks you away to the sea side of the Kyclades.  A simple Greek salad, or our more complex, but popular stuffed shrimp is the way to eat while in the East Village.  Take a seat in the white washed warmth of the coziest Greek restaurant to eat in Manhattan.  Make it your home away from home!



22



ASTORIA    EAST VILLAGE    BAYSIDE    CONTACT US    ABOUT US    +1 718-631-2800

# WELCOME TO
# TAVERNA KYCLADES
# BAYSIDE

TK-Bayside!  This latest edition to the TK family
expands TK in Queens while providing the excellent
service and cuisine that our patrons are accustomed to
experiencing at TK!  The excitement we feel at this
new edition to our family is beyond words!  Visit this
newest location on Bell Boulevard, convenient to more
of our Queens patrons, for lunch or dinner anytime.



**EXHIBIT B**



## ASTORIA MENU

APPETIZERS  |  SALADS & VEGETABLES  |  MAINS  |  LUNCH SPECIALS  |  WINE LIST

### APPETIZERS

KIDONIA GEMISTA/PSITA - Stuffed Clams w.Crabmeat/ or Grilled ........

OKTAPODI - Grilled Octapus ...............................

ATHERINA - Spearings ...................................

LOUKANIKO PSITO - Grilled Sausage ........................

KALAMARI - Fried Calamari ...............................

KYCLADES VEGGIE CHIPS
*Crispy Eggplant & Zucchini Chips w. Tzatziki Dip*

DOLMADAKIA - Stuffed Grape Leaves ........................

SPANAKOPITA - Spinach Pie ...............................

GIGANTES - Lima Beans in Tomato Sauce ...................

SAGANAKI - Pan-Fried Greek Cheese .......................

TARAMOSALATA - Caviar Dip ...............................

GAVROS - Anchovies ......................................

MARIDA - Smelts .........................................

TZATZIKI - Yogurt, Garlic & Cucumber Dip ................

PIKILIA - Assortment of Dips ............................



## EAST VILLAGE MENU

APPETIZERS  |  SALADS & SIDES  |  MAINS  |  LUNCH SPECIALS  |  WINE LIST

### APPETIZERS

KIDONIA GEMISTA/PSITA - Stuffed Clams w.Crabmeat/ or Grilled ........

MIDIA SAGANAKI - Mussels Steamed w. Tomato and Feta ...............

OKTAPODI - Grilled Octapus ...............................

LOUKANIKO PSITO - Grilled Sausage ........................

CALAMARI - Grilled or Crispy .............................

KYCLADES VEGGIE CHIPS
*Crispy Eggplant & Zucchini Chips w. Tzatziki Dip*

CRAB CAKES (1PCS) - Maryland Fresh Crab ..................

GIGANTES - Lima Beans in Tomato Sauce ...................

SAGANAKI - Pan-Fried Greek Cheese .......................

PIKILIA - Assortment of Dips ............................
*Greek style spreads Skordalia, tzatziki, taramosalata, tirokafteri.*

TARAMOSALATA - Caviar Dip ...............................

TZATZIKI - Yogurt, Garlic & Cucumber Dip ................

TIROKAFTERI - Spicy Feta Dip ............................

SKORDALIA - Mashed Potatoes with Garlic .................



ASTORIA    EAST VILLAGE    BAYSIDE    CONTACT US    ABOUT US    +1 718-631-2000

## BAYSIDE MENU

APPETIZERS  |  SALADS & SIDES  |  MAINS  |  LUNCH SPECIALS

### APPETIZERS

OKTAPODI – Grilled Octapus ..............................................

KALAMARI – Grilled or Fried Calamari ..............................

KIDONIA GEMISTA/PSITA – Stuffed Clams w.Crabmeat/ or Grilled ........

PIPERIES – Fried Peppers (with Tzatziki) ..........................

Greek Sausage – Grilled Sausage ...................................

KYCLADES VEGGIE CHIPS ..............................................
*Crispy Eggplant & Zucchini Chips w. Tzatziki Dip*

TIROKAFTERI – Spicy Feta Dip ......................................

LUMP CRAB CAKE ....................................................

SPANAKOPITA – Spinach Pie .........................................

GIGANTES – Lima Beans in Tomato Sauce .............................

SAGANAKI – Pan-Fried Greek Cheese .................................

TARAMOSALATA – Caviar Dip .........................................

TZATZIKI – Yogurt, Garlic & Cucumber Dip .........................

PIKILIA – Assortment of Dips .....................................
*Greek style spreads: Skordalia, tzatziki, taramosalata, tirokafteri.*

26