**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

GREGORIO VELASCO AVILA,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class,*

       Plaintiff,

          v.

ARDIAN CORP.
d/b/a TAVERNA KYCLADES,
MACCG LLC
d/b/a TAVERNA KYCLADES,
TK BELL LLC
d/b/a TAVERNA KYCLADES
ARDIAN SKENDERI
and CATERINA SKENDERI,

       Defendants.

**Case No**. 1:18-cv-04795-FB-TAM


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION TO CERTIFY CLASS AND APPOINT CLASS COUNSEL**


Lee Litigation Group, PLLC
C. K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

EXHIBITS …………………………………………………………………………..ii

TABLE OF AUTHORITES ………………………………………………………iii

I.      PRELIMINARY STATEMENT ……………………………………………1

II.     DEFENDANTS OPERATE AS A SINGLE EMPLOYER…………………………2

    A.  Interrelation of Operations …………………………………………………..3

    B.  Centralized Control, Common Management and Ownership ……………………4

III.    PLAINTIFF'S NEW YORK LABOR LAW CLAIMS …………………………6

    A.  Plaintiff Avila …………………………………………………………………6

    B.  The Class…………………………………………………………………..7

        (1)  Time-Shaving Through the Rounding Down of Hours ………………………7

        (2)  Failure to Pay Spread-of-Hours Premiums ………………………………10

        (3)  Failure to Provide Proper Wage Statements …………………………12

        (4)  Failure to Provide Proper Wage Notices ……………………………13

    C.  The Tipped SubClass         …………………………………………………14

IV.     PLAINTIFF SATISFIES ALL REQUIREMENTS OF RULE 23 ………………16

    A.  The Proposed Class is Identifiable and Ascertainable  …………………………18

    B.  The Class Is So Numerous that Joinder is Impracticable ………………………19

    C.  Commonality and Typicality Requirements Are Met  …………………………20

    D.  Plaintiff Will Adequately Represent the Class  …………………………………23

    E.  Common Questions of Law and Fact Predominate  ……………………………24

    F.  Class Treatment is Superior to Other Alternatives ……………………………27

    G.  Plaintiff's Counsel Should Be Appoint as Class Counsel ………………………28

V.      CONLUSION………………………………………………………………29

**EXHIBITS**

**Exhibit A** – Proposed Notice of Class Action

**Exhibit B** – Defendants' Website

**Exhibit C** – Defendants' Menus

**Exhibit D** – QNS Article About Defendants

**Exhibit E** – Deposition of Nicholas Kefaliakos

**Exhibit F** – Deposition of Ardian Skenderi

**Exhibit G** – Deposition of Caterina Skenderi

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ..................................... 17

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946) .................................................... 9, 11

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ......................................................... 9

*Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) ....................................................... 19

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) .............................. 22

*Baffa v. Donaldson*, *Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000).......................... 23

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002)................................ 21

*Cao v. Wu Liang Ye Lexington Rest., Inc.*, 2010 U.S. Dist. LEXIS 109373 (S.D.N.Y. Sep. 30,
    2010) .................................................................................................................................... 16

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ...................................... 21

*Chao v. Self Pride, Inc.*, 2005 U.S. Dist. LEXIS 11653 (D. Md. June 14, 2005).......................... 8

*Chen v. Xpresspa at Term. 4 JFK, LLC*, No. 15 Civ. 1347, 2016 U.S. Dist. LEXIS 20003
    (E.D.N.Y. Feb. 16, 2016)...................................................................................................... 29

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ................................................................... 16

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ...................................... 19

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ......................... 16

*East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176 (D. Ariz. 1998)........................................................ 8

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) ...................................................... 17

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011)................................................. 19

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012).......................................... 18, 20, 24, 29

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100 (E.D.N.Y. 2011)..... 21, 25, 28

*Gonzalez v. Nicholas Zito Racing Stable, Inc.*, No. 04 Civ. 22, 2008 U.S. Dist. LEXIS 27598
    (E.D.N.Y. Mar. 31, 2008) ..................................................................................................... 26

*Gortat v. Capala Bros., Inc.*, No. 07 Civ. 3629, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9,
    2010) .................................................................................................................................... 18

*Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335, 2012 U.S. Dist. LEXIS 186526
    (S.D.N.Y. Oct. 23, 2012) ................................................................................................ 19, 29

*Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. Mar. 2, 2008)
    ............................................................................................................................................. 25

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011)............................. 24

*Han v. Sterling Nat'l Mortg. Co.*, No. 09 Civ. 5589, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y.
    Sep. 14, 2011) ...................................................................................................................... 29

iii

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007).............. 19, 25, 27, 28

*In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389 (S.D.N.Y. 2008)...................... 17

*In Re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) .............................. 16

*Inclan v. New York Hospitality Grp.*, Inc., 95 F. Supp. 3d 490 (S.D.N.Y. 2015)........................ 15

*Jankowski v. Castaldi*, No. 01 Civ. 0164, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. 2006) .......... 17

*Kowalski v. YellowPages. com, LLC*, 10 Civ. 7318, 2012 WL 1097350 (S.D.N.Y. Mar. 31, 2012)
.................................................................................................................... 17

*Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343 (E.D.N.Y. 2009) .................................... 24

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242 (2d Cir.
2011) .............................................................................................................. 23

*Marin v. Apple-Metro, Inc.*, 2017 U.S. Dist. LEXIS 165568 (E.D.N.Y. Oct. 4, 2017)............... 15

*Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997) ............................................. 17, 21

*Mendez v. Pizza on Stone, LLC*, 2012 U.S. Dist. LEXIS 108605 (S.D.N.Y. Aug. 1, 2012) ........ 16

*Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 U.S. Dist. LEXIS 61557
(S.D.N.Y. Aug. 12, 2008) ................................................................................ 25

*Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178 (S.D.N.Y. 2007)............................... 25

*Moore v. Painewebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002)....................................... 25

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................... 25

*Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 U.S. Dist. LEXIS 64534 (E.D.N.Y.
2013) .............................................................................................................. 18

*Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897, 2007 U.S. Dist. LEXIS 98840 (E.D.N.Y. Mar.
30, 2007) ......................................................................................................... 17

*Noble v. 93 University Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)........................... 25

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009)...................................... 16

*Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sep. 16,
2014) .............................................................................................................. 28

*Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 U.S. Dist. LEXIS 46408
(E.D.N.Y. Apr. 2, 2012) .................................................................................. 25

*Reyes v. Sofia Fabulous Pizza Corp.*, 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014)  15

*Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381 (E.D.N.Y. 2007) ........................... 9

*Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 Civ. 5255, 2013 U.S. Dist. LEXIS 77183
(E.D.N.Y. May 31, 2013) .................................................................................. 25

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................. 24

*Rutella v National Sec. Corp.*, 2019 N.Y. Misc. LEXIS 7069, 2019 NY Slip Op 33908(U) (Sup.
Ct. Nassau County Dec. 13, 2019)....................................................................... 2

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013) ................................................................................................................ 18, 19

*Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54 (E.D.N.Y. 2014) ....... 18

*Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. 2007) ...................................................................................................... 24, 27

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013) ......................... 29

*Velez v. 111 Atlas Rest. Corp.*, No. 14 Civ. 6956, 2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016) .................................................................................................................. 29

*Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 18, 2005) ........................................................................................................................ 21

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................................................... 20, 21

*Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124 (2d Cir. 2001) ..................................................................................................... 23

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ........................... 27

*Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005) ...................................................... 10

*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ......................................... 9

*Zuccarini v. PVH Corp.*, No. 151755-16, 2016 N.Y. Misc. LEXIS 673, 2016 WL 827393 (Sup. Ct. N.Y. Cty. Feb. 29, 2016) ................................................................................................... 2

## STATUTES

N.Y. LAB. L. § 196-a ..................................................................................................................... 9

N.Y. LAB. L. § 198(1-b) ............................................................................................................... 13

N.Y. LAB. L. § 652 ......................................................................................................................... 7

## RULES

FED. R. CIV. P. 23 .................................................................................................................. passim

## REGULATIONS

12 N.Y.C.R.R. § 137-2.2 ............................................................................................................. 16

12 N.Y.C.R.R. § 146-1.3 ............................................................................................................. 14

12 N.Y.C.R.R. § 146-1.6 ............................................................................................................. 10

12 N.Y.C.R.R. § 146-2.2 ............................................................................................................. 14

12 N.Y.C.R.R. § 146-2.3 ....................................................................................................... 12, 15

12 N.YC.R.R. § 146-2.9 ............................................................................................................. 14

29 C.F.R. § 785.48(b) ..................................................................................................................... 7

## I.    PRELIMINARY STATEMENT

On August 23, 2018, Plaintiff Gregorio Velasco Avila ("Plaintiff") filed a Class and Collective Action Complaint against Ardian Corp. d/b/a Taverna Kyclades, MACCG LLC d/b/a Taverna Kyclades, TK Bell LLC d/b/a Taverna Kyclades ("Corporate Defendants"), Ardian Skenderi, and Caterina Skenderi ("Individual Defendants," collectively with Corporate Defendants, "Defendants"), seeking unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff brought his NYLL claims on behalf of himself and all current and former non-exempt employees, including, but not limited to, cooks, food preparers, dishwashers, cashiers, hosts/hostesses, porters, bartenders, barbacks, servers, runners, bussers and delivery persons, employed by Defendants during the statutory period. Plaintiff now moves to certify this lawsuit as a class action and seeks the following:

(1)    Certification of a class pursuant to Fed. R. Civ. P. consisting of all former and current non-exempt workers (including, but not limited to, cooks, line-cooks, food preparers, dishwashers, porters, counter attendants, cashiers, servers, bussers, hosts, baristas, and delivery workers) employed at any of Defendants' three (3) Taverna Kyclades locations at any time between August 23, 2012, and the certification of this class ("the Class").

(2)    Certification of a SubClass of all tipped employees employed at any of Defendants' three (3) Taverna Kyclades locations at any time between August 23, 2012, and the certification of this class ("the Tipped SubClass").

(3)    Designation of Plaintiff Avila as representatives of the Class and the Tipped SubClass;

(4)    Designation of Plaintiffs' counsel as the Class counsel;

(5)    Approval of the proposed notice of class action, attached as **Exhibit A** to the Declaration of C.K. Lee ("Lee Decl.");

(6)    Defendants' production of the list of all Class and SubClass Members, including their names, positions, social security numbers, last known mailing address, all known telephone numbers and e-mail addresses; and

1

(7)    Distribution of the notice of class action (including Spanish translation) to Class Members via first class mail.

## II.    DEFENDANTS OPERATE AS A SINGLE EMPLOYER

Defendants have operated an enterprise comprised of three Greek restaurants under the common trade name "Taverna Kyclades" at the following locations:

(a)    Astoria Location –  33-07 Ditmars Boulevard, Astoria, New York 11105;

(b)    East Village Location – 228 First Avenue, New York, New York 10009; and

(c)    Bayside Location – 3930 Bell Blvd, Bayside, New York 11361.

(collectively "the Restaurants").

The East Village location closed at some point between the filing of the Complaint and the present. The Astoria and Bayside locations remain open. While nominally separate in that they have different operating companies, Defendants three Restaurants have in practice operated as a single employer, such that Plaintiff may represent individuals who worked at any of the locations. Four factors determine whether nominally distinct entites constitute a single employer: "1) interrelation of operations, 2) centralized control of labor relations, 3) common management, and 4) common ownership of financial control." *Zuccarini v. PVH Corp.*, No. 151755-16, 2016 N.Y. Misc. LEXIS 673, 2016 WL 827393, at *2 (Sup. Ct. N.Y. Cty. Feb. 29, 2016). "While no one factor is determinative, the central concern is control of labor relations." *Rutella v National Sec. Corp.*, 2019 N.Y. Misc. LEXIS 7069, *8, 2019 NY Slip Op 33908(U), 5 (Sup. Ct. Nassau County Dec. 13, 2019).

## A.    Interrelation of Operations

The interrelation of Defendants' operations is demonstrated by the fact that the Restaurants advertise through the same website: http://www.tavernakyclades.com On their website's homepage, they expressly refer to  Taverna Kyclades in Astoria as the "flagship restaurant serving Mediterranea cuisine with the freshest Greek ingredients." The webpage also states that East Village Location "serves a home cooked meal that whisks you away to the sea side of the Kyclades." Finally, it advertises the Bayside Location as the "latest edition to the TK family" that provides "excellent service and cuisine." Lee Decl., **Exhibit B**. On  Defendants' website, users can access the menu sections for all Restaurant locations, and the menus are very similar. Lee Decl., **Exhibit C**.

An 2017 article in the online publication QNS announcing the anticipated opening of Defendants' Bayside location relates an Astoria employee explaining that Taverna Kyclades will be explanding to Bayside, where the menu will offer the same dishes. Lee Decl., **Exhibit D**.  This makes clear that, while nominally separate by virtue of having its own operating company, the Bayside location has always been understood by Defendants' as an expansion or extension of the Astoria location, not a genuinely seprate business.

The interrelation of Restaurant operations is confirmed by Defendants' 30(b)(6) representative, Mr. Nicholas Kefaliakos, who confirmed at his deposition that he has worked at all three locations and has been a manager at both the East Village and Bayside locations.

> **Q.**  Okay. So you were a server, and then you got promoted to work as a manager in the Manhattan location?
> **A.**  Yes.
> **Q.**  And then you moved from the Manhattan location to work as a manager back in Astoria, right?
> **A.**  Yeah, as a server.
> **Q.**  As a server again?
> **A.**  Yes.

3

> Q. Okay. And then from there, you moved to Bayside to become a manager?
> A. Correct

Lee Decl., **Exhibit E**, Deposition of Nicholas Kefaliakos ("Kefaliakos Dep.") 11:9 – 11:23.

While Plaintiff Avila worked solely at the Astoria location throughout his employment by Defendants, he observes that others transferred between locations, with one colleague named Juan confirming that Defendants' wage policies elsewhere were the same as at Astoria. Declaration of Gregorio Velasco Avila ("Avila Decl.") ¶ 23. The interrelationship of the various locations was further confirmed by Individual Defendant Ardian Skenderi at his deposition, where he confirmed that all three locations obtain their seafood collectively from the same seller:

> **Q.** Okay. Do you use the same fish vendor for all three locations?
> **A.** We get the fish ourselves.
> **Q.** Where do you get it from?
> **A.** Hunts Point Fish Market.
> **Q.** So you or somebody else at the store would go to the fish market to buy fish?
> **A.** Yes, sir.
> **Q.** For all three locations?
> **A.** Yes, sir.

Lee Decl., **Exhibit F**, Deposition of Ardian Skenderi ("A. Skenderi Dep.") 21:3-14

**B.     Centralized Control, Common Management and Ownership**

The other criteria for single-employer status are satisfied as well. Individual Defendant Ardian Skenderi confirms that he and his wife, Individual Defendant Caterina Skenderi are the sole owners of the Astoria and Bayside locations and were 50% owners of the East Village location, along with a partner. Lee Decl., **Exhibit F**, A. Skenderi Dep. 8:8-14, 16:16-24.  Mr. Skenderi also confirmed that he has the power to control workers conditions of employment:

> **Q.** But if the chef asked hey, you know, could I give the people in the kitchen a raise, because they're working really hard and, you know, I want to motivate them, you could say yes, right? You could talk to your partner, and then both of you could agree to give people a raise, right?
> **A.** I guess if they're doing a good job, we give more money, yes.

4

Lee Decl., **Exhibit F**, A. Skenderi Dep. 14:5-14

> **Q.**  He's [a manager] asking you, as the owner, if he can fire somebody, and you can say yes, right?
> **A.**  I can say no too.

Lee Decl., **Exhibit F**, A. Skenderi Dep. 14:25-15:4

Mr. Kefaliakos confirms that Mr. Skenderi is routinely involved in Restaurant operations:

> **Q.** Okay. And does Ardian come to the restaurants?
> **A.** He comes to Bayside.
> **Q.** Okay. When you were working in Astoria, did Ardian come to Astoria?
> **A.** Yes.

Lee Decl., **Exhibit E**, Kefaliakos Dep. 51:15-22.

> **Q.** Did he make sure people were doing their jobs?
> **A.** Yes.
> **Q.** He came by to check on things, right?
> **A.** Yes. He was checking some things here and there.
> **Q.** Making sure things were running smoothly, right?
> **A.** Yes.

Lee Decl., **Exhibit E**, Kefaliakos Dep. 52:7-16.

Individual Defendant Caterina Skenderi's control over Defendants labor practices is also

beyond doubt, as revealed by her deposition testimony:

> **Q.** Well, you could fire the managers, right; you work with them directly, right?
> **A.** I guess, yes.
> **Q.** And you could hire new managers, right, for either location, if you wanted to, right?
> MR. AVERY: You have to answer verbally so she can write it down.
> **A.** Yes.

Lee Decl., **Exhibit G**, Deposition of Caterina Skenderi ("C. Skenderi Dep.") 20:15-24

> **Q.** And you're the person who sets the wage policies for both the Bayside and Astoria locations, right?
> **A.** After consulting with my attorney.

Lee Decl., **Exhibit G**, C. Skenderi Dep. 60:19-23

In short, there is no question that the Restaurants have been commonly owned and commonly controlled by Individual Defendants, who have acknowledged their authority over Defendants' labor relations. Defendants are therefore a single employer.

## III.   PLAINTIFF'S NEW YORK LABOR LAW CLAIMS

### A.  Plaintiff Avila

In or about April 2009, Plaintiff was hired by Defendants to work as a busser for Defendants' location in Astoria. His employment was terminated by Individual Defendant Ardian Skenderi on May 28, 2017. Declaration of Gregorio Velasco Avila ("Avila Decl.") ¶ 1.

Up through around June 2016, Plaintiff was paid the tipped minimum wage.  From in or about June 2016 until in or about mid-February 2017, he was paid a base hourly rate of $9.00 per hour. From in or about mid-February 2017 until in or about early-March 2017, he was paid a base hourly rate of $11.00 per hour. From in or about early March 2017 until the end of his employment in May 2017, Defendants reduced his base hourly rate to $7.50 per hour.  Plaintiff recalls that other tipped employees were paid at least the tipped minimum wage but less than the regular minimum wage. Avila Decl. ¶ 4, 16.

Until around June 2016, Plaintiff usually worked six (6) days a week. On Monday, Wednesday, Thursday, Saturday, and Sunday, he usually worked double shifts between 11:00 am and 1:30 am, with a one-hour break in the middle. On Tuesdays, he usually worked only a single shift, between 5:00 pm and 1:30 am. After around June 2016, Plaintiff usually worked five (5) or six (6) days a week. Most of my shifts were seven (7) to nine (9) hours. But often at least one of his weekly shifts lasted longer than ten (10) hours. Plaintiff recalls that other employees had similar shifts. Avila Decl. ¶ 5.

As detailed below, Plaintiff and other employees were the victims of numerous wage and hour violations. Four of these apply to all Class members: (1) time-shaving through the unlawful rounding down of hours; (2) failure to pay spread-of-hours premiums for shifts exceeding ten hours; (3) failure to provide proper wage statements; (4) failure to provide proper wage notices. Plaintiff also seeks to represent a SubClass of Tipped Employees from whom Defendants took unlawful tip credits. As shown below, all these violations were perpetrated against employees uniformly, making Plaintiff's claims amenable to class-wide treatment.

### B. The Class

#### (1) Time Shaving Through the Rounding Down of Hours

New York Labor Law requires that an employer pay their employees for all hours worked. *See* N.Y. LAB. L. § 652 ("Every employer shall pay to each of its employees for each hour worked"). Accordingly, NYLL regulates the manner in which employers may round employee hours by tracking the relevant federal regulations. These regulations provide:

> ***"Rounding" practices.*** It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b)

The law therefore (a) prohibits employers from rounding employee hours in increments larger than fifteen minutes and (b) requires that any rounding average out in such a way that employees are fully compensated for all hours worked. Put another way, employers who round

must round up as much as they round down. *See East v. Bullock's, Inc*., 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998) ("starting and stopping time may be recorded to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour"); *Chao v. Self Pride, Inc*., 2005 U.S. Dist. LEXIS 11653, *17-18 (D. Md. June 14, 2005). ("The undisputed record before this Court reveals numerous violations of the FLSA by Self Pride. As previously detailed, Plaintiff has submitted actual employee time sheets which indicate that Adolphus Carr, and possibly other Self Pride managers, routinely altered employee records to reduce the total number of hours worked. Specifically, Self Pride … rounded employee hours down to the nearest hour").

Defendants have violated both the foregoing requirements. Until around June 2016, Defendants did not employ a clock-in system but rather recorded employee hours manually, and this allowed Defendants to round down employee hours to the nearest whole hours during this period.[1] So, for example, if an employee actually worked eight hours and forty minutes, s/he would be recognized as having worked only eight. Plaintiff estimates that, as a result, he and other employees were paid for about three (3) fewer hours than they actually worked each week. Avila Decl. ¶ 6.

Plaintiff proves this through documents attached to his Declaration. His sampling of Defendants' payroll forms from 2010 to 2014 reveals that employees were consistently recorded as having worked whole hours for every single shift of their employment.[2] Avila Decl. ¶ 7, **Exhibit**

---

[1] Mr. Kefaliakos could not recall whether a punch clock was employed in Astoria before he left to become manager of the East Village location in September 2013. But he acknowledges that there was no punch clock at the East Village location: "Q. I believe that during the time period you were working there, there was no punch clock in Manhattan; is that right? A. That is true." Lee Decl., **Exhibit E**, Kefaliakos Dep. 47:20-23, 48:12-16.

[2] Plaintiff alleges that the rounding down took place until around June 2016, when Defendants adopted a clock-in system that prevented them from engaging in this practice with impunity. Plaintiff's documentary evidence for this practice does not extend to 2016 because Defendants did

A. This did not occur naturally but was the direct result of Defendants policy of rounding down hours. Defendants may not remonstrate that employee hours are always in whole numbers because Defendants rounded up. Concededly, Plaintiff cannot conclusively prove the rounding-down by comparing the payroll records he has adduced to clock-in records. But that is entirely the consequence of Defendants' decision not to employ a clock-in system until around June 2016. And "[i]n the absence of documentation, the employee may rely on [their] own recollection to meet [their] initial burden, in which case the employer must proffer evidence sufficient to rebut that recollection." *Yu G. Ke v. Saigon Grill, Inc*., 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008) (citing *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946)).

New York Labor Law provides that the "failure of an employer to keep adequate records . . . shall not operate as a bar to filing of a complaint by an employee" and that, in such cases, "the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits, and wage supplements." N.Y. LAB. L. § 196-a. "When the employer's records are inaccurate or inadequate, the employee may meet this burden 'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.' … Plaintiff may meet this burden by relying solely on his or her recollection." *Rivera v. Ndola Pharm. Corp*., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)). Here, Plaintiff does not rely solely on his recollection, since the record conclusively establishes that Defendants paid employees only in increments of

---

not produce to him their payroll forms for 2015 and the first half of 2016. Nonetheless, the forms provided suffice to demonstrate a consistent pattern affecting all Class members, and Defendants may not use their own failure to produce comprehensive payroll data to cast doubt on Plaintiff's allegation that Defendants' unlawful rounding practices persisted until around June 2016, when Defendants' payroll system changed to include clock-ins.

whole hours, and the Court can reasonably presume that employers are more likely to have underpaid their employees than to have overpaid them, since wage and hour laws might be unnecessary were it otherwise. Rounding to the nearest hour is per se unlawful for precisely this reason, and Defendants cannot dispute that violation, which their own records unambiguously betray.

### (2)    Failure to Pay Spread-of-Hours Premiums

New York Labor Law requires that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly wage rate." 12 N.Y.C.R.R. § 146-1.6. Spread of hours is defined as "the length of the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." *Id.* Employees' entitlement to this compensation is in addition to any claim for minimum-wage payments or overtime. *See, e.g.*, *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 343 (S.D.N.Y. 2005).

Defendants failed to pay Plaintiff and Class members any spread-of-hours premiums notwithstanding that they regularly worked shift exceeding ten hours. Here, too, Plaintiff need not rely solely on his recollections, as Defendants' class-wide violations are proven by their own document production. Plaintiff has submitted a sampling of weekly timesheets from the period when Defendants began keeping time through a clock-in system. And these show that not only Plaintiff but other employees as well regularly worked shifts exceeding ten hours without receive spread-of-hours premium. Avila Decl., ¶ 9-12, **Exhibits B-E**. Since Defendants did not begin using a punch-in system until June 2016, Plaintiff cannot offer a precise accounting of what he and other Class members are owed for the years preceding this. But that is no bar to certification, since the damages can be estimated, and Defendants "cannot be heard to complain that the damages lack

10

the exactness and precision of measurement that would be possible had [they] kept records in accordance with the requirements of [the law]." *Anderson,* 328 U.S. at 688.

In any event, Defendants' attitude toward spread-of-hours is betrayed by the deposition testimony of their 30(b)(6) representative, Mr. Kefaliakos, who, as noted above, has worked at all three of Defendants' locations and been a manager at two:

> **Q.** So when you were working at Manhattan as a manager, if people had questions about their pay, would they come to you to ask about it?
> **A.** Yes.
> **Q.** Okay. If they asked you what a "tip credit" was, what would you say?
> **A.** What a tip credit was?
> **Q.** Yes.
> **A.** Nobody came to me with that question.
> **Q.** Well, let me ask you: Do you know what a tip credit is?
> **A.** No.
> **Q.** Okay. Do you know what "spread of hours" is?
> **A.** Spread of hours?
> **Q.** Yes.
> **A.** No.
> **Q.** Okay.

Lee Decl., **Exhibit E**, Kefaliakos Dep. 32:2-22

> **Q.** Okay. For the entire, you know, eight-, nine-year period since 2011, you didn't see anybody working more than 10 hours a day?
> **A.** I know I didn't work.
> **Q.** Okay.
> **A.** So I wasn't really looking around to see what others are doing.

Lee Decl., **Exhibit E**, Kefaliakos Dep. 36:7-15

Defendants could not have paid spread-of-hours premiums to Plaintiff and Class members because, not only do Defendants pay no attention to who is working shifts exceeding ten hours, they are also unfamiliar with the *very concept* of a spread-of-hours premium, a revelation that is fully consistent their payroll documents, as discussed above.

### (3)    Failure to Provide Proper Wage Statements

Under the Wage Theft Prevention Act ("WTPA"), employers must furnish each employee with wage statements, commonly known as paystubs, listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; regular hourly pay rate; overtime hourly pay rate; hours worked; gross wages; credits claimed for tips, meals, and lodging; deductions; and net wages. *See* N.Y. Lab. L. § 195-3; 12 N.Y.C.R.R. § 146-2.3. Under N.Y. Lab. L. § 198.1-d, for each week that Defendant failed to provide the statutorily-required wage statements to employees, Defendant is liable for $100.00 per work week during which the violation occurred, up to a maximum of $5,000, plus attorney's fees and costs and disbursements of the action.

Plaintiffs and Class Members did not receive proper wage statements from Defendants, however. Plaintiff attests to this in his Declaration and provides the names of other of Defendants' employees and former employees who can attest to this. Avila Decl.¶ 14, 18. While Defendants have furnished Plaintiff with various payroll documents, they have not produced any actual paystubs, for either Plaintiff or others, thereby confirming Plaintiff's recollections. Moreover, as Plaintiff explains and documents in his Declaration, he along with most other employees were misclassified as 1099 independent contractors.  Avila Decl. ¶ 13, **Exhibits B, D,** and **E**. This alone is reason enough to conclude that Plaintiff and Class members did not receive proper employee wage statements.  Finally, whatever wage statements Plaintiff and Class members might have received would have been improper, since these would have failed to accurately state all hours worked owing to Defendants' time-shaving practices.

**(4)    Failure to Provide Proper Wage Notices**

The WTPA requires every employer to provide employees with a written wage notice at the time of hiring and prior to any changes in the information on the notice. *See* N.Y. LAB. L. §§ 195-1,2; 12 N.Y.C.R.R. § 146-2.2. The notice must contain the regular hourly pay rate; overtime hourly pay rate; the amount of tip credit claimed as part of the minimum wage; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business; the mailing address if different; and the telephone number of the employer. *Id.* The notice must be provided in writing in English and in the primary language of the employee. *Id.* The employer must also obtain from the employee a signed and dated written acknowledgement of receipt of such notice, which the employer must keep for six years. *Id.* The "employer has the burden of proving compliance" with this requirement. *Id.* (emphasis added). N.Y. LAB. L. § 198(1-b) provides that, for each week employers fail to provide the statutorily-required notice to employees, they are liable for $50.00 per workweek during which the violation occurred, up to a maximum of $5,000.

Here, Plaintiff attests that he and Class members did not receive any form of wage notice from Defendants when they began their employment with Defendants or thereafter.  He also identifies a number of individuals who can corroborate this.  Avila Decl. ¶ 15, 18. Of course, Plaintiff cannot prove a negative. But the law does not require him to. As discussed above, it is Defendants' burden to produce any wage notices Plaintiff and Class members might have received when they were hired and thereafter, whenever their hourly wage changed.  If they cannot, the Court must presume that Plaintiff's recollections are accurate and certify the Class accordingly.

### C.  The Tipped SubClass

Plaintiff explains that he and other tipped employees were paid the tipped minimum wage until around June 2016. After that, his hourly wage was increased above the tipped minimum wage, but it remained below the regular minimum wage.  The same was true for Defendants' other tipped workers.  Avila Decl. ¶ 4, 18.

However, Defendants were not entitled to take a tip credit from Plaintiff or Tipped SubClass members for two reasons. *First*, under the NYLL, "if a tipped employee performs non-tipped work for (a) two hours or more, or (b) for more than 20 percent of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day." 12 N.YC.R.R. § 146-2.9.  As Plaintiff attests, he and other tipped employees spent over 20% of their time on non-tipped activities such as cleaning windows, sweeping and mopping the floor, and refilling the fridges with soda and beer. Plaintiff also offers the names of a number of former or present tipped employees who can confirm this.  Avila Decl. ¶ 17, 18.

*Second*, Defendants were not entitled to take a tip credit because, under the NYLL, "[a]n employer may take a credit towards the basic minimum hourly rate" only if certain preconditions are met. *See* 12 N.Y.C.R.R. § 146-1.3 (effective January 1, 2011). *See Gonzalez v. Jane Roe Inc.*, 2015 U.S. Dist. LEXIS 103370, at *6 n.6 (E.D.N.Y. July 15, 2015) (holding that "employer may receive the benefit of the tip credit under the NYLL only if the employer gives proper notice"). The employer must provide tipped employees with written notice "prior to the start of employment" detailing "the employee's regular hourly pay rate, overtime hourly pay rate, [and] the amount of tip credit, if any, to be taken from the basic minimum hourly rate" and informing the employee that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-2.2. "Failure to provide adequate tip credit

14

notice under [Section] 146-2.2 invalidates any tip credit claimed by the employer." *Reyes v. Sofia Fabulous Pizza Corp*., 2014 U.S. Dist. LEXIS 188734, at *23 (S.D.N.Y. Apr. 7, 2014). Mere oral notice of the tip credit is insufficient to satisfy the exacting NYLL tip credit requirement. *See Marin v. Apple-Metro, Inc*., 2017 U.S. Dist. LEXIS 165568, *111 (E.D.N.Y. Oct. 4, 2017) ("courts have found that evidence of oral notice of the tip credit provision to employees failed to satisfy the NYLL's tip credit notice requirements").

Here, Defendants failed to provide written tip credit notice to tipped employees prior to the start of their employment, as required by NYLL. Plaintiff attests that neither he nor other Tipped SubClass members received tip credit notices and identifies six other tipped employees, five bussers and a waitress who can confirm this.  Avila Decl. ¶ 15-16, 18.  Again, it is Defendants' burden to provide documentary evidence that would rebut Plaintiff's recollections. Even if Defendants could produce a proper tip notice that was given to Plaintiff, this alone would not absolve them of liability, since  "the WTPA also require[s] the Restaurant to provide annual notice of the tip credit to its employees on or before February 1, 2012."  *Inclan v. New York Hospitality Grp*., Inc., 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015). In other words, to escape liability, Defendants must produce every tip credit notice they were legally required to produce. That outcome is unlikely.  As shown by his deposition testimony, reproduced above, Defendants' 30(b)(6) representative Mr. Kefaliakos—who worked at all three of Defendants' locations and was a manager at two—*no more understands the concept of a tip credit than he does that of a spread-of-hours premium.*

In addition, New York employers must "provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages," listing tip credit claimed as part of the minimum wage. 12 N.Y.C.R.R. § 146-2.3. *See Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 309

(E.D.N.Y. 2009) (citing 12 N.Y.C.R.R. § 137-2.2); *Cao v. Wu Liang Ye Lexington Rest., Inc.*, 2010 U.S. Dist. LEXIS 109373, at \*6 (S.D.N.Y. Sep. 30, 2010). Here, Defendants failed to provide proper wage statements with the required tip credit disclosures to Plaintiff and other members of the Tipped SubClass (since these were 1099 statements, not proper employee wage statements). Thus, even if Defendants had provided Tipped SubClass members with proper tip credit notices, their deficient wage statements would alone suffice to invalidate any tip credit deduction that Defendants may claim they were entitled to take. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011); *Padilla*, 643 F. Supp. 2d at 309-10. An employer may not take a tip credit unless it complies strictly with all statutory requirements, and Defendants plainly have not. *See Mendez v. Pizza on Stone, LLC*, 2012 U.S. Dist. LEXIS 108605, at \*11 (S.D.N.Y. Aug. 1, 2012) (noting the "strict prerequisites" to taking tip credits under the NYLL).

## IV.    PLAINTIFF SATISFIES ALL REQUIREMENTS OF RULE 23

Rule 23 provides that a court should certify a class where, as here, plaintiffs satisfy each of the four conditions of Rule 23(a) as well as one of the three requirements of Rule 23(b). *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In Re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ("A district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met.").

Specifically, under Rule 23(a), plaintiffs must demonstrate that:

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These requirements are generally referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition, Rule 23(a) implicitly

requires that class members be "identifiable and ascertainable." *See Jankowski v. Castaldi*, No. 01 Civ. 0164, 2006 U.S. Dist. LEXIS 4237, at *4 (E.D.N.Y. 2006). Then, under Rule 23(b)(3), plaintiffs must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

When considering whether the requirements of Rule 23 have been met, "a court may not address the merits of the action except to the extent that a merits issue overlaps with a Rule 23 requirement." *In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008). *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Ultimately, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Kowalski v. YellowPages. com, LLC*, 10 Civ. 7318, 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012)).

The requirements of Rule 23 tend to overlap or merge with each other, so courts are to "adopt a standard of flexibility," *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997), and "are encouraged to construe the requirements of Rule 23 liberally in order to effectuate its overall purpose." *Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897, 2007 U.S. Dist. LEXIS 98840, at *16 (E.D.N.Y. Mar. 30, 2007). "These purposes include the protection of small claims through aggregation and promoting judicial economy." *Id.* (citation omitted); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968) ("[T]he class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation."). In addition, "it is

appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.* (citation omitted).

Accordingly, courts generally "take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class." *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014) (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012). Indeed, "[c]ourts in this Circuit have displayed a preference for granting rather than denying class certification." *Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 U.S. Dist. LEXIS 64534, at *15 (E.D.N.Y. 2013).

When taken together, Plaintiff's Declaration, Defendants' document production, and the deposition testimonies of Defendants' representatives demonstrate a systematic pattern of non-compliance with the NYLL that has had repercussions for all Class Members. These supply more than enough factual support to satisfy all the requirements of Rule 23.

### A.   The Proposed Class Is Identifiable and Ascertainable

A class is identifiable and ascertainable where "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 U.S. Dist. LEXIS 36357, at *95 (S.D.N.Y. Mar. 15, 2013). The standard "is not demanding" and the Court "need only be able to ascertain the general boundaries of the proposed class." *Gortat v. Capala Bros., Inc.*, No. 07 Civ. 3629, 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010).

Here, Plaintiff has defined the Class and Tipped SubClass through objective, unambiguous criteria that will permit the Court to readily determine whether an individual does or does not fall within them. Class Members can easily be identified based on Defendants' employment records. *See Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 n.85 (S.D.N.Y. 2011) ("The class . . . is easily identified from [defendant's] payroll records. Thus, the implied requirement of ascertainability is satisfied."); *Guan Ming Lin v. Benihana N.Y. Corp*., No. 10 Civ. 1335, 2012 U.S. Dist. LEXIS 186526, at *36 (S.D.N.Y. Oct. 23, 2012) (holding that class members are objectively identifiable in light of factors such as the name of employer, employment period, and whether employee is paid minimum wage, based on defendants' payroll records and wage statements); *Spencer*, 2013 U.S. Dist. LEXIS 36357, at *95-96 (holding that the class is easy to ascertain from defendant's own employment records). NYLL requires employers to maintain and preserve payroll records for each employee for at least six years. *See* N.Y. LAB. L. § 195; 12 N.Y.C.R.R. § 146-2.1. Thus, the proposed class is identifiable and ascertainable.

### B.    The Class Is So Numerous that Joinder Is Impracticable

Although there is no rigid numerical threshold for measuring the impracticability of joinder, the Second Circuit has stated that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. 2007). *See Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) ("courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer"). "[P]laintiff need not present a precise calculation of the number of class members" and the Court may "rely on reasonable inferences drawn from available

facts," provided that Plaintiff presents "some evidence of or reasonably estimate the number of class members." *Flores*, 284 F.R.D. at 123.

The Class readily satisfies the numerosity requirement. Plaintiff recalls that Defendants' Astoria location employed 30 individuals, with an average turnover of about five employees each year.  Avila Decl. ¶ 23. This recollection is consistent with the testimony of Individual Defendant Caterina Skenderi, who estimates that the Astoria location at one point had 30-31 front- and back-of-the-house workers. Lee Decl., **Exhibit G**, C. Skenderi Dep. 39: 9-18.  Mr. Kefaliakos estimates that the East Village location had 18-22 front-of-the-house employees and 6-7 in the kitchen. Lee Decl., **Exhibit E**, Kefaliakos Dep. 24:16-25. He also estimates that the Bayside location has 22-25 front of the house employees and 10 kitchen employees Lee Decl., **Exhibit E**, Kefaliakos Dep. 27:23 – 28:14. In sum, numerosity is clearly established when we consider (a) that a total of 90 employees worked at all the locations combined; (b) the annual turnover, which Plaintiff estimates at 20%; and (c) that the Class period for this action reaches back to 2012. Mr. Kefaliakos's estimates regarding the East Village and Bayside locations do not include managers.  And even if we assume that a few of the 30 Astoria employees were salaried, it is clear that the overall size of the Class exceeds 40 by a wide margin.

### C.    Commonality and Typicality Requirements Are Met

The commonality and typicality requirements "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n. 5 (2011). "As a result, the commonality and typicality

requirements tend to merge into one another, and similar considerations animate the analysis" of the two requirements. *Marisol A.*, 126 F.3d at 376.

Commonality is met when there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). It requires that the claims of the proposed class "depend upon a common contention" "that is capable of classwide resolution." *Dukes*, 131 S. Ct. at 2551. It "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y. 2011) (citing *Damassia*, 250 F.R.D. at 156). *See Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2005 U.S. Dist. LEXIS 709, at *9 (S.D.N.Y. Jan. 18, 2005) ("The commonality requirement may be met when individual circumstances of class members differ, but their injuries derive from a unitary course of conduct."). "[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Garcia*, 281 F.R.D. at 105 (emphasis added). *See Dukes*, 131 S. Ct. at 2556 ("Even a single [common] question will do.").

Typicality requires that the claims of Plaintiff are typical of the claims of the Class. *See* FED. R. CIV. P. 23(a)(3). It is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376. "As with commonality, typicality need not be complete." *Damassia*, 250 F.R.D. at 157. Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). *See Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.");

21

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86-87 (S.D.N.Y. 2001) (If "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

As demonstated above, Plaintiff has more than enough evidence to demonstrate that "there is at least 'one issue common to all class members' that provides the 'unifying thread' which serves to bind the claims of the class members together." *Martinez v. Ayken, Inc.*, No. 13 Civ. 7411, 2016 U.S. Dist. LEXIS 25556, at *28 (E.D.N.Y. Feb. 29, 2016). Here there are a number of questions common to the Class and Tipped SubClass. These include:

(a) whether Defendants rounded down employees' daily hours worked to the nearest whole number until around June 2016;

(b) whether Defendants have failed to pay employees spread-of-hours premiums when those employees worked shifts lasting longer than ten hours;

(c) whether Defendants provided Class members with any wage statements at all;

(d) Whether whatever wage statements Defendants might have provided to Class and SubClass members were legally deficient by virtue of (1) not accurately representing all hours worked; (2) not including spread-of-hour premiums; (3) not stating trip credit deductions taken by Defendants; and (4) being 1099 statements that did not contain all the information that the Wage Theft Protection Act requires for employee wage statements.

(e) Whether Tipped SubClass members spent over 20% of their time engaged in non-tipped activities.

(f) Whether Defendants failed to provide Tipped SubClass members with required tip credit notices.

In sum, because all Plaintiff's claims are common to and typical of the claims of Class and SubClass members, and because these claims can be resolved with generalized answer and proof revolving around the legality of Defendants' companywide wage policies, the commonality and typicality requirements are met.

**D.    Plaintiffs Will Adequately Represent the Class**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement is satisfied where "(1) plaintiff's interests are [not] antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, *Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Satisfaction of the typicality requirement "is strong evidence that [the plaintiffs'] interests are not antagonistic to those of the class; the same strategies that will vindicate [the plaintiffs'] claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158.

In order to defeat class certification, "the conflict [of interests] must be 'fundamental.'" *See Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124, 145 (2d Cir. 2001). While the courts have yet to explicitly define a "fundamental" conflict, it was held to exist when "the interests of the class representative can be pursued only at the expense of the interests of all the class members." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011). Further, it is worth noting that even "in the event a fundamental conflict does exist, it can be ameliorated by separating the class into 'homogeneous subclasses . . . with separate representation to eliminate conflicting interests.'" *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *31 (quoting *Literary Works*, 654 F.3d at 259).

Here, Plaintiff has stated his willingness, and demonstrated his ability, to adequately represent the Class. *See* Avila Decl. ¶¶ 25-26. *See Flores*, 284 F.R.D. at 130 ("Courts in this [C]ircuit have found that plaintiffs' affidavits can properly satisfy evidence adequacy."); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 396 (N.D.N.Y. 2011) ("The affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims."); *Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 352 (E.D.N.Y. 2009) (finding adequacy, relying in part on plaintiff's affidavit). As explained above, Plaintiff was subject to the same policies and practices as the Class and SubClass, and has no interests that are antagonistic to those of the Class and SubClass. (*Id.*) The same legal arguments and strategies will be used to vindicate his claims and those of all other non-exempt employees of Defendants.

## E.    Common Questions of Law and Fact Predominate

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members, and . . . [that a] class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Plaintiffs have met the various criteria under Rule 23(a), and this is perhaps the best indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *22 (S.D.N.Y. 2007) ("The proposed class satisfies the requirements of Rule 23(b)(3) for many of the reasons discussed above [in discussion of Rule 23(a)].").

Under Rule 23(b)(3), common questions of law or fact predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy

can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individual proof." *Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 U.S. Dist. LEXIS 61557, at *24 (S.D.N.Y. Aug. 12, 2008). *See Rosario v. Valentine Ave. Disc. Store, Co*., No. 10 Civ. 5255, 2013 U.S. Dist. LEXIS 77183, at *31 (E.D.N.Y. May 31, 2013) (the predominance requirement is a "stricter version of the Rule 23(a) commonality requirement").

Courts routinely find that common questions predominate in wage and hour actions that are brought on behalf of a class of employees of the same employer and allege unlawful policies and practices. *See, e.g*., *Rosario*, 2013 U.S. Dist. LEXIS 77183, at *32; *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012); *Garcia*, 281 F.R.D. at 108; *Damassia*, 250 F.R.D. at 161; *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2008 U.S. Dist. LEXIS 15821, at *24 (E.D.N.Y. Mar. 2, 2008); *Mentor v. Imperial Parking Sys*., 246 F.R.D. 178, 184 (S.D.N.Y. 2007); *Iglesias-Mendoza*, 239 F.R.D. at 373; *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004). In fact, "numerous courts have found that wage claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due." *Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 U.S. Dist. LEXIS 46408, at *27 (E.D.N.Y. Apr. 2, 2012).

Here, there is absolutely no reason to believe that individual issues will overshadow those common to the Class and SubClass. Indeed, the only conceivable indiviudal issues will have to do with how long a Class or SubClass member worked for Defendants, which may have a bearing on the damages they are owed. And Courts are unanimous that such variations cannot defeat class certification. To the extent that Plaintiff and Class Members "have different damages, depending on the length of time they were employed, the wages they received, and the hours they worked,

25

such questions do not defeat predominance." *Id. See Gonzalez v. Nicholas Zito Racing Stable, Inc.*, No. 04 Civ. 22, 2008 U.S. Dist. LEXIS 27598, at *22 (E.D.N.Y. Mar. 31, 2008) ("factual variation among the circumstances of the class members is inevitable and does not defeat the predominance requirement.").

We know that common issues will predominate over individual ones for three sets of reasons. *First*, Plaintiff has submited the names of a number of co-workers who can also attest to Defendants' unlawful policies. He also describes several conversations and incidents that confirm the existence of these policies. Avila Decl. ¶¶ 18-22. One of these, a coworker named Juan who has also worked at the East Village location, can confirm that Defendants' policies were the same there as in Astoria.

*Second*, the existence of uniform policies across both locations and employees has been confirmed by Defendants' own representatives.  Ms. Skenderi confirms that wage policies were identical in Astoria and Bayside:

> **Q.** So do you pay all of your front-of-the-house servers at Astoria and Bayside the same pay rate?
> **A.** Whatever we spoke to Vincent about, yes.
> **Q.** Okay. Whatever your attorney had advised you to pay your front-of-the-house staff, that's what you paid; and you pay the same rate at Bayside and Astoria, right?
> **A.** Yes.

Lee Decl., **Exhibit G**, C. Skenderi Dep. 38:15-39:2

In the same vein, Mr. Kefaliakos cofirms that Plaintiff was subject to the same policies as every other employee:

> **Q.** Well, he wasn't singled out for special treatment, right, when he was working there, right?
> **A.** No.
> **Q.** He was just an employee like everybody else, right?
> **A.** Correct.
> **Q.** And there would be no reason for the company to treat him differently than any other busser or server that was working there, right?
> **A.** No.

Lee Decl., **Exhibit E**, Kefaliakos Dep. 65:9-20

*Third*, the documentary evidence attached to Plaintiff's Declaration is alone sufficient to establish the predominance of common issues. The Court is not required to speculate as to whether Plaintiff's allegations admit of "generalized proof" because *Plaintiff has already submitted that generalized proof*. *Moore*, 306 F.3d at 1252.

As discussed, **Exhibit A** shows that employees uniformly were paid for whole hours. The long list of redacted names in that document makes clear that Plaintiff was only one of many employees who were paid in whole-hour increments—which is per se unlawful. **Exhibits B**, **C**, and **E** show that not only Plaintiff but also other employees worked shifts that exceeded ten hours. They also show that no one was paid spread-of-hours premiums because Defendants' payroll system was not even designed to allow for these.  "These types of claims are about the most perfect questions for class treatment." *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *39 (citing *Iglesias-Mendoza*, 239 F.R.D. at 373). In sum, common questions regarding the legality of Defendants' compensation policies and practices predominate over any individual inquiries that may arise. Accordingly, Plaintiff has satisfied the predominance requirement under Rule 23(b)(3).

## F.    Class Treatment Is Superior to Other Alternatives

"Courts in this Circuit . . . have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method." *Trinidad*, 2007 U.S. Dist. LEXIS 2914, at *25 (collecting cases). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by [the] Defendant." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011).

Not only would a class action in the instant case allow for a "more cost-efficient and fair litigation of common disputes" than individual actions, but "it is likely the only device by which many of the proposed class members would obtain relief." *Garcia*, 281 F.R.D. at 108; *Martinez*, 2016 U.S. Dist. LEXIS 25556, at \*42. *See Iglesias-Mendoza*, 239 F.R.D. at 373 (finding it "extremely unlikely" that proposed class members would pursue separate actions where they were "almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system"); *Perez v. Allstate Ins. Co*., No. 11 Civ. 1812, 2014 U.S. Dist. LEXIS 130214, at \*67 (E.D.N.Y. Sep. 16, 2014) ("In the instant case, the NYLL Class consists of hundreds of potential class members, most of whom are likely to have suffered a small economic loss if they prevailed on individual claims arising from the dispute that is the subject of this lawsuit. Therefore, few individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail, particularly when many of the putative plaintiffs have suffered economic loss of de minimis value.").

Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

**G.    Plaintiff's Counsel Should Be Appointed as Class Counsel**

Rule 23(g) requires that an attorney appointed to serve as class counsel "must fairly and adequately represent the interests of the class." Plaintiff's counsel has been approved as class

counsel in over 60 class actions and is amply serving the interest of the Class.[3] *See* Declaration of C.K. Lee in Support of Plaintiff's Motion to Certify Class and Appoint Class Counsel.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff has satisfied all of the requirements under Fed. R. Civ. P. 23. Therefore, Plaintiff respectfully requests that his motion for class certification be granted in its entirety.

Dated: New York, New York                           Respectfully submitted,

July 30, 2021

By:    /s/ C.K. Lee

C.K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff and the Class*

---

[3] *See, e.g.*, *Velez v. 111 Atlas Rest. Corp*., No. 14 Civ. 6956, 2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016) (certifying Rule 23 class action); *Martinez v. Ayken, Inc*., No. 13 Civ. 7411, 2016 U.S. Dist. LEXIS 25556 (E.D.N.Y. Feb. 29, 2016) (certifying Rule 23 class action); *Chen v. Xpresspa at Term. 4 JFK, LLC*, No. 15 Civ. 1347, 2016 U.S. Dist. LEXIS 20003 (E.D.N.Y. Feb. 16, 2016); (conditionally certifying nationwide FLSA collective action); *Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335, 2013 U.S. Dist. LEXIS 27792 (S.D.N.Y. Feb. 27, 2013) (certifying Rule 23 class action); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013) (conditionally certifying FLSA collective action); *Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) (certifying Rule 23 class action); *Han v. Sterling Nat'l Mortg. Co.*, No. 09 Civ. 5589, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. Sep. 14, 2011) (certifying Rule 23 class action).