UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

GREGORIO VELASCO AVILA, on behalf of himself, FLSA Collective Plaintiffs and the Class,

               Plaintiffs,

v.

ARDIAN CORP., d/b/a TAVERNA KYCLADES, MACCG, LCC, d/b/a TAVERNA KYCLADES, TK BELL, LLC, d/b/a TAVERNA KYCLADES, ARDIAN SKENDERI, and CATERINA SKENDERI,

               Defendants.

Civil Action No. 1:18-cv-04795(FB)(SMG)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23

**FORDHARRISON, LLP**
366 Madison Avenue, 7th Floor
New York, NY 10017
(212) 453-5959
Attorneys for Defendants

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................................ 1

PRELIMINARY STATEMENT ................................................................................................... 2

STATEMENT OF FACTS ............................................................................................................ 4

    I.  Plaintiff's Employment Prior to June of 2016 ...................................................................... 4

    II. Plaintiff's Employment From June of 2016 Until His Separation...................................... 7

    III. Plaintiff's "Spread of Hours" Allegations .......................................................................... 9

LEGAL ARGUMENT................................................................................................................... 10

    I.  THE STANDARD............................................................................................................ 10

    II. PLAINTIFF'S WAGE NOTICE, TIP NOTICE AND WAGE STATEMENT
        CLAIMS CANNOT ESTABLISH NUMEROSITY, COMMONALITY,
        TYPICALITY OR PREDOMINANCE................................................................................ 12

    III. PLAINTIFF'S "SPREAD OF HOURS" CLAIM FAILS TO SATISFY THE
         REQUIREMENTS OF RULE 23(a) AND 23(b) ............................................................. 20

    IV. PLAINTIFF'S "ROUNDING" CLAIM FAILS TO SATISFY THE
         REQUIREMENTS OF RULE 23(a) AND 23(b)(3)....................................................... 21

CONCLUSION............................................................................................................................... 24

## PRELIMINARY STATEMENT

Defendants Ardian Corp., d/b/a Taverna Kyclades ("TK Astoria"), MACCG, LLC, d/b/a Taverna Kyclades ("TK Manhattan"), TK Bell, LLC, d/b/a Taverna Kyclades ("TK Bayside"), Ardian Skenderi ("A. Skenderi") and Caterina Skenderi ("C. Skenderi")(collectively, "Defendants") submit this Memorandum of Law in Opposition to the Motion to Certify a Class Action pursuant to Federal Rules of Civil Procedure 23 ("Rule 23") submitted by Plaintiff Gregorio Velasco Avila ("Plaintiff"). This Motion should be denied for a number of reasons (which are detailed below), but the most important can be boiled down to a single sentence: according to Plaintiff's *own* Complaint and *own* sworn deposition testimony, he was paid in a manner entirely distinct from any of the employees at any of the restaurants involved in this manner.

For instance, according to both the Complaint and Plaintiff's sworn testimony, he was initially paid a flat rate per shift until some point in 2016, at which point he was put "on the books," and was paid appropriately from that point forward. While Defendants vigorously dispute this allegation, the evidence suggests that no other employees at any of the three locations were paid in this manner – which is precisely why Plaintiff now attempts to completely disregard his own testimony and allegations and concoct some novel "rounding" claim upon which a class claim could be asserted. In reality, nobody (including Plaintiff) was paid a flat rate per shift, and TK Astoria's actual "rounding" policy, which was to simply round to the nearest 15 minute increment (higher or lower) is perfectly lawful, as evidenced by the very regulation cited in Plaintiff's Memorandum of Law. In other words, he asserted one type of claim, and because there is not a single employee at any of the restaurants as to whom he would be able to

2

establish commonality, he is attempting to alter the entire core of his claim to challenge a company policy he claims he was not subject to and which is perfectly lawful.

Similarly, with regard to Plaintiff's wage notice, tip notice and wage statement claims, it suffices to say that (a) the employees at each location have received such documents, and (b) Plaintiff alleges he never did. Plaintiff's counsel asked for a sample of the wage notices from TK Astoria, and they were provided.  He then asked for a sample of the wage notices provided to employees at TK Bayside, and those too were provided. Plaintiff claims he never received any such notice.  His attempt to now assert a wage or tip notice claim on behalf of a class of individuals who received such documents is so absurd it honestly is not worthy of the attention of this Court. Stated simply, Plaintiff is not similarly situated to the employees he is attempting to include in his class.  The same is true with regard to his wage statement claim, since he is attempting to assert a claim for failing to provide a wage statement (because he claims he was "off the books" on behalf of all of the on-the-books front and back of the house employees at TK Astoria, TK Bayside and TK Manhattan.

Finally, Plaintiff admitted that he never worked at TK Bayside or TK Manhattan, the former of which was opened more recently and whose employment policies were opened with the consultation of counsel, and the latter of whom is not controlled or operated by the named Defendants in any way whatsoever.   As such, to suggest, as Plaintiff does here, that his vague and conclusory allegations regarding the pay practices of companies he has never worked for – none of which are consistent with the actual evidence in this case – is somehow sufficient to satisfy the rigorous hurdle associated with Rule 23 is equally meritless. This is particularly true given the fact that the same bare-bones, conclusory affidavits have repeatedly been deemed

insufficient by the Courts in this Circuit to satisfy the far more lenient standard employed for conditional certification motions under the FLSA.

Stated simply, Plaintiff is attempting to (a) assert claims he, himself, does not possess (i.e., his "rounding" claim), (b) certify a class that is composed of employees who do not possess the very claim upon which class certification would be based (his wage notice, tip notice and wage statement claims), and (c) certify a class made of mostly employees who worked elsewhere and were never subject to the same pay practices as Plaintiff, based on vague and conclusory allegations that conflict with the actual evidence in this case.

Accordingly, for the reasons that follow, Plaintiff's Motion for Class Certification should be denied.

## STATEMENT OF FACTS

### I.  *Plaintiff's Employment Prior to June of 2016*

Plaintiff was hired to work as a busboy by TK Astoria in or around April of 2009.  (Ex. A, Compl. at ¶23; Ex. B, Pl. Dep. Tr. at 9:8-17)  Importantly, from that point until his separation of employment in or around May, 2017, he worked exclusively for TK Astoria.  (Ex. B at 18:16-19:15)  He never worked at TK Bayside or TK Manhattan, and thus, has no knowledge or information regarding the pay practices in place at either of these two other locations. (*Id.*)

According to Plaintiff, from his hiring in 2009 until approximately June of 2016, he worked six (6) days per week, from 11:00 a.m. until 1:30 a.m., for a total of eighty one (81) hours per week. (Ex. A at ¶ 25)  During this time period, Plaintiff alleges that he was paid a flat $20 per shift and worked a double shift, thus receiving $40 per day in addition to the tips he received, with the first shift beginning at 11:00 am and ending at 5:00 pm and the second shift running from 5:00 pm to 1:30 am. (**Ex. B** at 20:13-22:6)  Importantly, according to Plaintiff's

4

testimony, none of the employees were on payroll prior to 2016. (*Id.* at 46:5-23)  This is notable, since it is simply not accurate, as evidenced by the exhibits submitted in support of the very Motion currently before this Court. (Pl.'s Decl. at Ex. A)  In other words, while all the other employees were, in reality, on payroll, Plaintiff's allegations and testimony is that he was not. (*Id.*)

This is also true with regard to Plaintiff's wage notice and wage statement allegations. Specifically, Plaintiff alleges that he never received a wage notice in accordance with the NYLL. Setting aside whether this is factually accurate as to Plaintiff, alone, it is clear that the employees at the other locations, including both TK Astoria and TK Bayside, did in fact receive such notices – a sampling of which were produced in discovery pursuant to an agreement between counsel for the parties.  (*See* **Ex. D**; *see also* **Ex. E**)  In fact, Plaintiff, *himself*, acknowledged having no knowledge or information as to whether the other employees at TK Astoria received a wage notice or statement prior to 2016 in his sworn deposition. (Ex. B at 24-47:11)

Indeed, this delta between Plaintiff's conclusory allegations regarding how other employees were paid (which he acknowledged having no information or knowledge on during his deposition) and both the documentary evidence and testimony of other employees was particularly stark during the deposition of an employee by the name of Nicholaos Kefaliakos ("Kegaliakos") – who has worked in varying capacities at all three restaurant locations, including most importantly, as one of the servers at TK Astoria when Plaintiff worked there.

For instance, during his deposition, Kefaliakos testified that, from in or around 2011 until September of 2013, he worked as a waiter at TK Astoria. Then, in September of 2013, he began working as the manager of TK Manhattan until he was terminated by one of the other partners of A. Skenderi in or around early 2015. At that point, he was rehired as a server to work at TK

5

Astoria until in or around April of 2018, at which point he became the manager of TK Bayside, *which is when the location opened*. (**Ex. C**, Kefaliakos Dep. Tr. at 6:25-11:23)

Notably, with regard to TK Astoria's practices, Kefaliakos testified that when he was working as a server at TK Astoria, he was always paid on an hourly basis, including from 2011-2013 and from 2015 through April of 2018. (**Ex. C** at 48:21-25)   He also testified that he received a wage notice when he was a server at TK Astoria in 2011. (*Id.* at 59:2-19)

Furthermore, Kefaliakos testified that when he was a server at TK Astoria, neither he, nor any of the other front of the house employees, worked 10 hour shifts or overtime on a regular basis. (**Ex. C** at 35:16-36:18)   While working as a server at TK Astoria, Kefaliakos further testified the maximum number of hours he would work on any given day was 8, and that he typically worked 5 days per week. (*Id.* at 42:25-44:4)   He also testified that the employees would leave at 12:30 am or at the latest, 12:45 am (on weekends) or 11:30-11:45 pm (on weekdays), because the restaurant closed at 12:00 am on the weekends and 11:00 pm on weekdays and the post-closing work took no more than 15 minutes to complete.   (*Id.* at 43:22-44:4, 44:11-46:10)   In fact, in the winter, when the restaurant is less busy, the employees at TK Astoria would leave as early as 11:00 pm. (*Id.*)   This observation is particularly notable since Plaintiff testified he would leave at the same time as the servers, such as Kefaliakos.   (**Ex. B** at 50:14-22)   In other words, one of the very class members Plaintiff is seeking to represent has testified that basically none of Plaintiff's allegations – i.e., that he was paid a flat rate for each shift, that he never received a wage notice or wage statement, that he worked until 1:30 am six days per week, etc. – were true for him or any of the other wait staff, who also were on payroll contrary to Plaintiff's allegations. (*See e.g.*, Pl. Decl. at **Ex. A**)

This is entirely consistent with the testimony of C. Skenderi, who testified that all

bussers, servers and runners at TK Astoria are paid on an hourly basis. (**Ex. F**, C. Skenderi Dep. Tr. at 30:22-31:22)  C. Skenderi also notably pointed out that the employees who work in the "back of the house" at TK Astoria (*i.e.,* cooks, food preparers and dishwashers) are paid differently than the "front of the house" staff (*i.e.,* wait staff, bussers and hosts).  Specifically, the back of the employees are paid an hourly rate well in excess of the minimum wage, earning as much as \$28.00 per hour. (**Ex. F** at 42:10-22)  The front of the house employees, however, were paid the "tipped minimum wage" at the time.[1] (**Ex. F** at 53:16-55:23)

Additionally, with regard to TK Bayside, Kefaliakos testified that since it opened in or around April of 2018, he has been careful to ensure that its front of the house employees do not work overtime. (**Ex. C** at 37:3-23)  Furthermore, contrary to the insinuations in Plaintiff's Motion, all of the employees at Bayside have received wage notices and are paid the appropriate wage rate – an observation evidenced by both the records and Kefaliakos' testimony.  (**Ex. E**; *see also*, **Ex. C** at 29:2-17)  Notably, neither of these allegations can be refuted by Plaintiff since he testified (a) he never worked at TK Bayside, (b) was never subjected to TK Bayside's pay practices, and (c) has no knowledge or information concerning the pay practices as to which the TK Bayside employees are subjected. (**Ex. B** at 18:6-19:15)

## II.    *Plaintiff's Employment From June of 2016 Until His Separation*

First and foremost, although Plaintiff asserts in his Complaint that, beginning in June of 2016 and continuing to the end of his employment, he worked a total of fifty nine (59) hours per week (**Ex. A** at ¶26), he subsequently admitted that, beginning in June of 2016: (a) he actually only worked a maximum of 40-42 hours per week (**Ex. B** at 41:11-42:8); and (b) *he was paid for all hours worked*. (*Id.* at 42:9-20, 44:12-18).   From June of 2016 until the end of his

---

[1]  This observation is important because, as explained below, there is no subgroup of employees that Plaintiff can create that would consist of even close to the 40 individuals required to establish numerosity.

employment, Plaintiff acknowledges that he was clocking in and out on each shift, was paid "on the books," through the payroll system utilized by TK Astoria, and received wage statements for each pay period. (*Id.* at 33:10-25)

Nevertheless, in his Complaint, Plaintiff asserts that – beginning "***in June of 2016***" -- TK Astoria began rounding the hours of each of his shifts down, essentially suggesting that TK Astoria implemented a *new* practice of "time shaving" once it placed Plaintiff on payroll. (**Ex. A** at ¶31)(emphasis added) Notably, at no point in his Complaint or his deposition does Plaintiff ever claim he was subjected to such "time shaving" prior to June of 2016.  (**Ex. A; Ex. B**)

This observation is particularly important because, as explained below, Plaintiff's latest argument regarding his "time shaving" claim is that, while the payroll records and time cards show that TK Astoria's actual rounding policy was to simply round to the nearest 15 minutes, with multiple examples in Plaintiff's own exhibits of Plaintiff being overpaid based on this policy (*see e.g.*, Pl. Decl. at **Ex. E**), the Court should certify a class action because Plaintiff was subjected to rounding *prior* to putting him on payroll in 2016.  (*See* Pl. MOL at pp. 7-9) However, according to both Plaintiff's own Complaint and testimony, he was paid a flat rate prior to 2016, and thus, would not have been subjected to any "rounding" to the nearest 15 minutes, like he asserts the other employees were.  Moreover, seeing that he has no knowledge or information regarding the hours worked by other employees or the implementation of the "rounding" policy (to which he was allegedly not even subjected) prior to 2016, he obviously cannot rely on a conclusory allegation in a bare-bones affidavit to satisfy Rule 23's stringent evidentiary standards.

Moreover, a number of other observations regarding Plaintiff's allegations concerning TK Astoria's "rounding" practice are in order.  First, the only evidence he has submitted is

actually evidence of a lawful rounding policy (*See* Pl. Decl. **Ex. C, D** and **E**) Second, the only actual admissible testimony on this subject that has been offered in this case is that of C. Skenderi and Kefaliakos who testified that TK Astoria rounds to the nearest 15 minute interval, and that said policy was based upon the advice of counsel – a point made particularly clear when it was pointed out in their respective depositions.  Specifically, according to C. Skenderi, since in or around 2013 or 2014, upon the advice of counsel, both TK Astoria and TK Bayside have rounded employees' shift times to the closest 15 minute increment, which sometimes increases an employee's shift time by a maximum of 7 minutes and sometimes decreases the shift time by a maximum of 7 minutes.  (**Ex. F**, C. Skenderi Dep. Tr. at 44:18-49:24)  For instance, if an employee worked a total of 4 hours and 36 minutes on any given shift, they would get paid for 4 and one-half hours (the closest 15 minute increment), but if he/she worked 6 hours and 52 minutes, he would be paid for 7 hours, since that was the closest 15 minute increment – both examples pulled directly from Plaintiff's own time records. (**Ex. C** at 66:2-69:3)

Accordingly, as explained below, his bare-bones, conclusory affidavit on this issue is plainly contradicted by the actual evidence and woefully insufficient to sustain his burden under Rule 23 in connection with his newly-created "time-shaving" claim.

## III.    *Plaintiff's "Spread of Hours" Allegations*

The final basis upon which Plaintiff bases his Motion for Class Certification is that the employees at the three restaurant locations regularly worked shifts that spanned 10 hours or more, including breaks but were not paid the "spread of hours" premium under the NYLL. (*See* Pl.'s MOL at pp. 10-11)  However, a number of observations regarding this particular allegation are required.

First, according to Plaintiff, himself, prior to 2016, his shifts were longer on every single day than all but one other employee at TK Astoria, because (a) he and one other busser would

9

show up to work at 11:00 a.m., an hour earlier than all other employees, to perform the "pre-opening" work at the restaurant (**Ex. B** at 22:10-24:10), and (b) he would stay later than all but one of the other busser who worked double shifts. (*Id.* at 28:21-31:9)  Second, Plaintiff testified that his shifts rarely, if ever, exceeded 10 hours following June of 2016. (**Ex. B** at 41:11-44:18)

Third, Plaintiff has offered no evidence or testimony that the waiters total work day exceeded 10 hours, and, in fact, the only evidence or testimony on this point suggests that, while Plaintiff and one other individual may have worked in excess of 10 hours on multiple occasions, that was not the case for the front of the house employees writ large.  (*See* **Ex. C** at 35:18-36:18; **Ex. F** at 58:16-59:9)[2]  Third, based Plaintiff's own exhibits, as well as the payroll records that were produced, it is clear that the occasions on which the employees at TK Astoria worked a day in excess of 10 hours was exceedingly rare, and there is nowhere close to 40 employees who have worked a day on which the start and end times of the workday, including breaks, exceeds 10 hours. (*See* **Ex. G**; *see also*, Pl. Decl. at **Ex. A-E**)

## LEGAL ARGUMENT

### I.   *THE STANDARD*

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" and it is accordingly available only to those parties who are able to "affirmatively demonstrate [their] compliance" with the requirements of Rule 23. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013)(internal citations

---

[2]       As discussed in greater detail below, it must be noted that this is not a case in which Defendants failed to maintain adequate records.  It is a case in which Plaintiff requested certain records, some records were produced with objections to others, motion practice ensued, and counsel for the parties came to an agreement as to what should be produced.  Those records, which were all of the records for Plaintiff and a sample of records for other employees and other locations, were, in fact produced, after which the parties came close to reaching a resolution. When that resolution broke down, Plaintiff did not seek any additional records – he simply filed this Motion, and then asserted that since every single payroll record or wage notice has not been produced, they do not exist.  That is simply not true, and defense counsel would be willing to clearly prove as much if Plaintiff actually sought such records rather than relying on the conclusory allegations in his affidavit.

omitted). Accordingly, it is well-settled that a class action may only be certified if the plaintiff establishes by a preponderance of the evidence that (a) each of the requirements set forth in Fed. R. Civ. P. 23(a) have been met, and (b) the proposed class meets one of the three standards set forth in Fed. R. Civ. P. 23(b). *See e.g.*, *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14 (1997).

Specifically, a plaintiff seeking class certification must first establish: (1) "the class is so numerous that joinder of all members is impracticable," (*a.k.a.,* "numerosity"); (2) "there are questions of law or fact common to the class," (*a.k.a.,* "commonality"); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," (*a.k.a.,* "typicality"); and (4) "the representative parties will fairly and adequately protect the interests of the class," (*a.k.a.,* "adequacy of representation."). Fed. R. Civ. P. 23(a). "As the Supreme Court stated in *Wal-Mart*, Rule 23 is not a mere pleading standard... The party seeking certification must affirmatively demonstrate compliance with the Rule — that is, "he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Shayler v. Midtown Investigations, Ltd.*, 2013 U.S. Dist. LEXIS 29540 at *12, 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 (2011)).

Second, even if the plaintiff is able to prove all four of these elements by a preponderance of the evidence, class certification will only be appropriate if, after conducting a "rigorous analysis," the court is satisfied that one of the standards set forth in Fed. R. Civ. P. 23(b) is met. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

Here, Plaintiff has elected to invoke Fed. R. Civ. P. 23(b)(3) as the standard for determining whether she has satisfied the 23(b) requirement. Accordingly, class certification will only be appropriate in this case if the Court "finds that the questions of law or fact common

to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In this case, regardless of how Plaintiff attempts to frame the class for which certification is sought, he cannot satisfy the numerosity, commonality and/or typicality requirements of Rule 23(a), or the predominance and superiority requirements of Rule 23(b)(3). Accordingly, for the reasons that follow, Defendants respectfully request that the Court deny Plaintiff's motion for class certification.

## II. PLAINTIFF'S WAGE NOTICE, TIP NOTICE AND WAGE STATEMENT CLAIMS CANNOT ESTABLISH NUMEROSITY, COMMONALITY, TYPICALITY OR PREDOMINANCE

### A. Plaintiff Cannot Establish Numerosity With Regard to His Wage Notice, Tip Notice or Wage Statement Claims

With regard to the numerosity requirement, the Court must weigh the following factors:

(1)     judicial economy;
(2)     geographic dispersion of the proposed class members;
(3)     financial resources of the proposed class members;
(4)     the ability of proposed class members to file individual suits;
(5)     requests for relief that could effect future class members;
(6)     knowledge of the names and existence of potential class members;
(7)     whether potential class members have already joined in other actions.

*Shayler v. Midtown Investigations, Ltd.*, 2013 U.S. Dist. LEXIS 29540 at *12-13 (citing collection of cases).

Notably, where the plaintiff's offering on this element amounts to nothing more than conclusory allegations or speculation, it is well-settled that numerosity is not satisfied. *See e.g.*, *The Bd. Of Trustees of the So. Cal. IBEW-NECA Defined Contribution Plan v. The Bank of New*

12

*York Mellon Corp.*, 09 Civ. 6273, 287 F.R.D. 216, 2012 U.S.  Dist. LEXIS 121711, \*22 (S.D.N.Y. Aug. 16, 2012) ("Where plaintiffs assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails.") (citations omitted).

Moreover, generally speaking, the threshold for numerosity hovers around 40 class members, meaning courts will presume numerosity upon a showing that more than 40 individuals were subjected to the same actions that form the basis of the plaintiff's claims, but will typically deny class certification on numerosity grounds where the proposed class, in reality, would include less than that number of individuals. *Compare CL-Alexanders Laing & Cruickshank v.  Goldfeld*, 127 F.R.D. 454, 455 (S.D.N.Y. 1985) (twenty-five proposed class members is not sufficient to satisfy the numerosity requirement); *Ansari v. New York Univ.*, 179 F.R.D.  112, 114 (S.D.N.Y. 1998) (twenty-one individuals is not sufficient); *with Tiro v. Public Housing Investmts., LLC*, 288 F.R.D. 272, (S.D.N.Y. 2012)(presumption of numerosity arises at forty).

Finally, it is particularly important to note that where a plaintiff in a wage and hour case is attempting to satisfy the numerosity requirement by simply including the total head count of employees who work at other locations under the same branding name (as is the case here), courts have been extremely reluctant to capitulate to such attempts given the difference in pay practices, management, etc., that exists at each location. *Shayler*, 2013 U.S. Dist. LEXIS 29540 at \*15-16 (describing its reluctance to find numerosity where the plaintiffs in a NYLL relied on a list of 57 employees who worked at various locations of the same company due to the potential differences in pay practices, management, etc.)

In this case, not only has Plaintiff failed to offer any evidence that there are at least 40 employees of TK Astoria, TK Bayside and/or TK Manhattan – jointly or separately – who never

received a wage notice or wage statement.  To the contrary, during discovery, Plaintiff sought sample payroll records (wage statements) and wage notices from the TK Astoria and TK Bayside locations, and was provided those records.  (**Ex. D; Ex. E**; *see also*, **Ex. H**)  Moreover, Plaintiff admitted that he has no knowledge or information as to whether anyone else received a wage notice prior to 2016 or at some point thereafter – he is just adamant that he, personally, did not. (**Ex. B** at 24-47:11)

Importantly, while Plaintiff attempts to overcome these fatal flaws with his conclusory declaration that all the employees at the three locations were subject to the same policies, these very same assertions have been routinely deemed insufficient to satisfy even the far more lenient standard for conditional certification of a collective action under the FLSA, and thus, not even close to sufficient to satisfy the evidentiary standards of Rule 23. *See e.g.*, *Cruz v. 70-30 Austin St. Bakery, Inc.*, Case No. 18 Civ. 7408 (PAE) (HBP), 2019 U.S. Dist. LEXIS 73666 \*; 2019 WL 1929910 (S.D.N.Y. May 1, 2019)(denying plaintiff's motion for conditional certification notwithstanding far more lenient standard based on a virtually identical affidavit of the named plaintiff); *see also*, *Guo v. Tommy's Sushi Inc.*, No. 14 CIV. 3946 PAE, 2014 U.S.  Dist. LEXIS 147981, 2014 WL 5314822, at \*3 (S.D.N.Y.  Oct. 16, 2014) (denying motion for conditional certification where "[p]laintiffs' submissions do not contain any allegations regarding, for example, the specific hours worked by, or the amounts paid to, other employees,"); *Chinatown Take-Out Inc.*, Case No. 16 Civ. 7787 (JCM), 2018 U.S. Dist. LEXIS 28693, 2018 WL 1027161 at \*4-5 (S.D.N.Y. Feb. 21, 2018)(denying conditional certification based on plaintiff's claim that other employees were "underpaid," because he did not identify who they were, how they were paid or whether they worked over 40 hours per week); *Fu v. Mee May Corp.*, 15 Civ. 4549 (KPF), 2016 U.S. Dist. LEXIS   53199, 2016 WL 1588132 at \*3 (S.D.N.Y. Apr. 20, 2016)

14

(Failla, D.J.) (denying conditional certification based on plaintiff's "conversations" with co-workers); *Mata v. Foodbridge LLC*, 2015 U.S.  Dist. LEXIS 70550, 2015 WL 3457293 at *3-4 (denying motion for conditional certification where plaintiff's only support for his claim that other employees were not paid overtime was his "observations and conversations with other employees" without any underlying details of those conversations).  The same result is clearly warranted here, seeing that a motion for conditional certification is assessed under a far less exacting standard than that which applies to Plaintiff's Rule 23 Motion.  *See e.g.*, *Meyers v. Hertz Corp.,* 624 F.3d 537 (2d Cir. 2010) (explaining how Rule 23 Motions are subject to a far more rigorous analysis than conditional certification motions under FLSA)

Furthermore, one of TK Astoria's former servers, whom would presumably be included in the class Plaintiff seeks to represent, has testified that, contrary to Plaintiff's allegations, he received a wage notice back in 2011 when he was hired.  (**Ex. C** at 59:2-19)  Finally, the undisputed evidence in this case shows that the employees at TK Manhattan also received the requisite wage notices and statements (**Ex. C** at 58:17-25), and seeing that Plaintiff never worked at the Manhattan location, and it is subject to an entirely separate ownership structure, there is no basis to even include the employees at TK Manhattan in the scope of the proposed class (an observation Plaintiff implicitly concedes by focusing almost exclusively on the employees of TK Astoria and TK Bayside in his motion papers).

Thus, in short, Defendants have produced samples of the wage notices and wage statements provided to employees at TK Bayside and TK Astoria, another employee has testified that he, too, received a wage notice when he was a server at TK Astoria, and Plaintiff has not produced a single iota or testimony or evidence that, besides himself, anyone working at any of the 3 locations failed to receive the requisite notices and wage statements at any point relevant

15

hereto. In fact, in his moving papers, Plaintiff does not even assert that he has established numerosity – or even address the element at all. He simply attempts to ignore it, hoping the Court will do the same. However, as stated above, Plaintiff must offer actual admissible evidence that there are at least around 40 or more employees who never received a wage notice, tip notice or wage statement in order to satisfy the numerosity requirement, and he has simply failed to do so.

Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion for Class Certification.

**B.    Plaintiff Cannot Establish Commonality, Typicality or Predominance with Regard to the Employees Who Received Wage Notices and Wage Statements**

In order to satisfy the commonality requirement, Plaintiff must affirmatively demonstrate with a preponderance of the evidence that his claims and the potential claims of the class members "depend upon a common contention . . . [that is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Ouedraogo v. A-1 Int'l Courier Serv.*, Case No. 12-cv-5651 (AJN), 2014 U.S. Dist. LEXIS 132156 *8; 2014 WL 4652549 (S.D.N.Y. Sept. 18, 2014) (quoting *Cuevas v. Citizens Fin. Grp.*, Inc., 526 F. App'x 19, 21 (2d Cir. 2013)).

The "typicality" requirement is "satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Saleem v. Corporate Transp. Group, Ltd.*, Case No. 12 Civ. 8450 (JMF), 2013 U.S. Dist. LEXIS 163934 *28-29; 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013) (quoting *Sykes v. Mel Harris & Assocs.*, LLC, 285 F.R.D. 279, 287 (S.D.N.Y. 2012)) "Notably, the Supreme Court has observed that 'the commonality and typicality requirements of Rule 23(a)

tend to merge.'" *Saleem,* 2013 U.S. Dist. LEXIS 163934 at \*28-29 (quoting *Gen. Tel.  Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13, (1982)).

"Likewise, the predominance inquiry is similar to, but more demanding than, the commonality inquiry." *Saleem,* 2013 U.S. Dist. LEXIS 163934 at \*28-29 (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  Specifically, in order to satisfy the predominance requirement, Plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In assessing this element, the Court must assess (1) the elements of both the claims and defenses at issue, (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief,' and (3) 'whether the common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues.'" *Scott,* 954 F.3d at 512 (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)).  Notably, where a plaintiff's testimony on the core issues in a wage and hour case differs from that of one of the proposed class members, courts have held that the individualized nature of the claims preclude a showing of predominance under Rule 23(b)(3). *Scott,* 954 F.3d at 512-513.

Here, it should be noted that this is not a situation in which the Plaintiff is seeking conditional certification of a collective action under the FLSA, and has limited it to the "off the books" employees who did not receive wage notices or wage statements at TK Astoria and TK Bayside.  Rather, he is seeking to include all of the "on the books" employees at 3 separate restaurants, each of whom has received a wage statement and wage notice, all while admitting he

17

has no evidence that there is anywhere even close to the 40 employees required to establish numerosity. In other words, he is attempting to sidestep this element of Rule 23 by simply including individuals who do not possess the very claim he is seeking to certify as a class action. However, there is clearly no commonality or typicality with regard to such employees and Plaintiff has utterly failed to satisfy the predominance element with regard to this particular theory.

Indeed, the only evidence that has been offered in this case on this issue is (a) testimony from a former server at TK Astoria, and current manager at TK Bayside that he received wage notices when he was a server at TK Astoria and the employees at TK Bayside and TK Manhattan all receive the requisite wage notices and wage statements, (b) samples of such wage notices and wage statements, and (c) an admission by Plaintiff he has no knowledge as to whether the other employees at any of the locations received such notices and wage statements, and thus, cannot offer admissible testimony on this particular subject. This is particularly notable, as courts have held that the existence of contradictory evidence (between plaintiff and the class members) as to the merits of a plaintiff's claim in a wage and hour case strongly weighs against finding commonality under Rule 23. *See e.g.*, *Saleem v. Corporate Transp. Group, Ltd.*, Case No. 12 Civ. 8450 (JMF), 2013 U.S. Dist. LEXIS 163934 *23; 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013)(commonality not established where there were discrepancies between plaintiff's theory of case and testimony regarding other members of the proposed class that went to the merits of the underlying claim).

Moreover, as set forth above, Plaintiff cannot overcome these flaws with his application with a bare-bones, conclusory affidavit that he believes the other employees of the other locations have not received wage notices, since such an affidavit would not even be sufficient to

warrant conditional certification of a collective action. *Cruz v. 70-30 Austin St. Bakery, Inc.*, Case No. 18 Civ. 7408 (PAE) (HBP), 2019 U.S. Dist. LEXIS 73666 *; 2019 WL 1929910 (S.D.N.Y. May 1, 2019)(denying plaintiff's motion for conditional certification notwithstanding far more lenient standard based on a virtually identical affidavit of the named plaintiff); *see also*, *Guo*, 2014 WL 5314822, at *3; *Chinatown Take-Out Inc.*, 2018 WL 1027161 at *4-5; *Fu,* 2016 WL 1588132 at *3; *Mata*, 2015 WL 3457293 at *3-4.

Indeed, in that sense, this case is virtually identical to *Bondi v. New Rochelle Hotel Assocs.*, Case No. 17 CV 5681 (KMK)(LMS), 2018 U.S. Dist. LEXIS 209005 (S.D.N.Y. Dec. 7, 2018), wherein the plaintiffs similarly sought class certification of "[a]ll food service workers and tipped employees employed by Defendants whom the Defendants employed in the … restaurant and did not pay the proper minimum wage for all the hours that they worked, did not pay a spread of hours premium for working shifts exceeding 10 hours in length, and did not provide the proper wage notices pursuant to the [NYLL]." *Id.* at *30 (alterations in original). In that case, the plaintiffs actually relied on the declarations of the 7 named plaintiffs, which contained more detail than Plaintiff's single affidavit in this case, in connection with their Rule 23 motion, and the court soundly rejected such evidence as sufficient to satisfy commonality, typicality or predominance, explaining:

> In this case, … the Named Plaintiffs have failed to offer sufficient evidence that the alleged illegal plans or policies of Defendants were uniformly applied to all class members. Plaintiffs have not demonstrated that Defendants implemented an explicit policy to deny compensation to their employees, and the anecdotal evidence submitted by Plaintiffs also lacks sufficient detail to enable this Court to conclude that Defendants implemented a common de facto policy. The declarations provided by Plaintiffs in support of their motion are conclusory and lack the kind of precision and detail from which the Court might infer a uniform policy on the part of Defendants to deny compensation to their employees. While the Named Plaintiffs may not have individually received a

> tip-credit notice, spread-of-hours premium, the proper amount of tips, or the required statutory wage notices, they fail to show a "common policy."
>
> Similar to *Fernandez*, the anecdotal evidence in this case is insufficient. The declarations here are devoid of information such as the names of other class members, conversations that the Named Plaintiffs may have had with putative class members, or any details that demonstrate that the individual grievances of the Named Plaintiffs were shared by others. Additionally, besides the declarations provided, there is no deposition or other testimony that has come to light to enable the Court to determine whether the Named Plaintiffs' claims are common and/or typical of the class.

*Bondi*, 2018 U.S. Dist. LEXIS 209005 at *48-49.

The same result is warranted in this case, as Plaintiff here has offered no evidence that the members of the class he is seeking to represent actually failed to receive the requisite wage notices and statements, and testified he does not know if they did or no. All of the actual evidence, including the testimony of a former-server turned manager, C. Skenderi and the sample notices and statements produced, indicate that, besides Plaintiff and perhaps one or two other individuals, all employees received wage notices and wage statements. Accordingly, for the same reasons the court in *Bondi* denied the plaintiffs' motion for class certification, Plaintiff's Motion for Class Certification here should equally be denied.

## III.   *PLAINTIFF'S "SPREAD OF HOURS" CLAIM FAILS TO SATISFY THE REQUIREMENTS OF RULE 23(a) AND 23(b)*

Plaintiff's attempt to certify a class action under Rule 23 based on a "spread of hours" claim under the NYLL should fail largely for the same reasons as his wage notice, tip notice and wage statement claims: (a) it is based upon a bare-bones conclusory affidavit by plaintiff that other employees were subject to the same issue, (b) notwithstanding Defendants' production of hundreds of pages of payroll and wage statements during discovery, Plaintiff has not identified any instance in which other employees at TK Astoria worked in excess of 10 hours but did not

receive the "spread of hours" premium, let alone instances at TK Bayside or TK Manhattan, (c) Plaintiff, himself, testified that his work days were longer than those of every other employee at TK Astoria, except one other busser, and (d) the only testimony from another potential class member that has been offered in this case is that the workdays of the employees at each of the 3 locations do not exceed 10 hours.  In other words, Plaintiff is attempting to have this Court conclude that all employees of TK Astoria, TK Bayside and TK Manhattan were subject to the same grueling schedule of workdays in excess of 10 hours after having testified he worked more than all but one employee and has no knowledge regarding the work hours of the employees at TK Bayside and TK Manhattan. He has also failed to offer any evidence to support his Motion notwithstanding having hundreds of pages of payroll and time records to sort through.

Accordingly, for the same reasons Plaintiff's Rule 23 Motion must fail as to his wage notice, tip notice and wage statement claims, the Court should deny his Motion as to his spread of hours claim under the NYLL. *See e.g.*, *Bondi*, 2018 U.S. Dist. LEXIS 209005 at \*48-49.

## IV. *PLAINTIFF'S "ROUNDING" CLAIM FAILS TO SATISFY THE REQUIREMENTS OF RULE 23(a) AND 23(b)(3)*

First and foremost, it must be noted that, as is clear from the regulation cited in Plaintiff's own Memorandum of Law, the practice of "rounding" employees' time to the nearest 15 minute interval is entirely lawful under both the FLSA and NYLL, so long as it is applied neutrally, with employees' time being rounded up when it is closer to the higher 15 minute interval, and down when it is closer to the lower interval. *See e.g.*, 29 C.F.R. § 785,48(b)(explicitly approving the practice of rounding so long as it is applied neutrally to the nearest interval). This is important because in evaluating a motion for class certification, merit questions such as this one should be considered to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Saleem v. Corporate Transp. Group, Ltd.*, Case No. 12 Civ.

8450 (JMF), 2013 U.S. Dist. LEXIS 163934 *15; 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013)).

Second, literally ***all*** of the evidence and testimony in this case shows that was precisely the policy adopted by TK Astoria and TK Bayside, after consultation with counsel. Specifically, according to C. Skenderi, the policy at both TK Astoria and TK Bayside is to round an employees' shift time to the closest 15 minute increment, which sometimes increases an employee's shift time by a maximum of 7 minutes and sometimes decreases the shift time by a maximum of 7 minutes. (**Ex. F**, C. Skenderi Dep. Tr. at 44:18-49:24)  This is precisely why when Plaintiff's counsel raised this issues in the above-referenced depositions, the witnesses correctly pointed out that when Plaintiff worked a total of 4 hours and 36 minutes on a particular shift, he was paid for 4 and one-half hours (the closest 15 minute increment), and when he worked 6 hours and 52 minutes, he would be paid for 7 hours, since that was the closest 15 minute increment.  (**Ex. C** at 66:2-69:3)  This testimony is entirely consistent with the very exhibits upon which Plaintiff relies in connection with this argument, since those exhibits have multiple instances of his time being rounded up when the shift time was closer to the higher 15 minute interval.  (*See e.g.*, Pl. Decl. at **Ex. E**)  Notably, notwithstanding having hundreds of pages of time and pay records, Plaintiff has not identified a single instance in which an employee's shift time should have been rounded up pursuant to this lawful and neutral policy, but was actually rounded down.  Not one.

Instead, what Plaintiff has attempted to do is to completely rewrite his lawsuit and disregard his testimony to now assert for the first time that Plaintiff was subject to impermissible rounding (i.e., where the employer only rounds the employee's shift time down, and never up) prior to 2016.  This attempt is facially ludicrous for three obvious reasons.  First, Plaintiff's

Complaint asserts that he became subject to the "rounding policy" beginning "*in June of 2016*" (**Ex. A** at ¶31)(emphasis added), because that is when he began to be paid hourly and track his time using a hand scanning clock-in system.  Second, Plaintiff testified that, prior to 2016, he was a flat-rate worker, who was paid $20 per shift, regardless of the length of that shift, and claimed that he did not use any time tracking system during that time. (**Ex. B** at 20:13-22:6)

Third, to the extent Plaintiff is attempting to certify a class of workers who, prior to 2016, were (a) paid hourly, (b) used a clock-in and clock-out system to record the start and end of their shifts, (c) were on payroll, and (d) were subjected to a rounding policy whereby all shift times were rounded down, regardless of the closest 15 minute increment, he is seeking to represent a class to which he, himself, does not even belong (based on his own Complaint and testimony), in connection with a theory for which he has offered no evidence.

Indeed, as to the former observation, there is clearly no commonality, typicality or predominance between (a) an employee, like Plaintiff, who asserts he was paid a flat rate per shift, regardless of the shift length, the minimum wage, or any of the other legal requirements imposed by the NYLL, and who never clocked in or out and thus could not have been subjected to any policy of "rounding" to the nearest interval (the permissible and actual policy) or always rounded down (his unsupported theory for the other employees), and (b) employees who clock-in and clock out, have their time reported, and then the time they actually worked is rounded to the nearest interval pursuant to an actual policy of the employer.  In fact, the types of proofs for these two distinct claims are completely separate, and thus, it would be impossible to assert that the evidence in support of his claims and the "rounding" claims of the potential class members "depend upon a common contention . . . [that is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is

23

central to the validity of each one of the claims in one stroke." *Ouedraogo,* 2014 U.S. Dist. LEXIS 132156 at *8; *Cuevas,* 526 F. App'x at 21. Accordingly, there is simply no commonality between Plaintiff's claims and the claims of the prospective class in this case. Likewise, there is no typicality, since Plaintiff clearly cannot show his flat-rate claims arise from the "same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Saleem*, 2013 U.S. Dist. LEXIS 163934 at *28-29.

To wit, the claims would not even involve the same types of evidence, as the evidence related to any pre-2016 "rounding" claim would be based upon an assessment of the time cards and payroll records to determine whether there were any instances where an hourly employee's shift time should have been rounded up but was actually rounded down – and according to Plaintiff, he was not paid hourly, did not use any clock in/out system, and is not even on the very records that would need to be assessed to make a class wide determination on this issue. Stated simply, Plaintiff is not a member of the class he is now seeking to represent: namely, hourly "on the books" employees for whom there are time and payroll records to make a determination as to whether the rounding was permissible and in accordance with the stated policy.

For these reasons, Defendants respectfully request the Court deny Plaintiff's Motion.

## CONCLUSION

For foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Class Certification.

Respectfully submitted,

**FORDHARRISON, LLP**

Dated: August 30, 2021             By: ___/s/ Vincent Avery___
                                              Vincent Avery

24