**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREGORIO VELASCO AVILA, *on behalf of himself, FLSA Collective Plaintiffs and the Class*, <br><br> Plaintiff, <br><br> v. <br><br> ARDIAN CORP. d/b/a TAVERNA KYCLADES, MACCG LLC d/b/a TAVERNA KYCLADES, TK BELL LLC d/b/a TAVERNA KYCLADES ARDIAN SKENDERI and CATERINA SKENDERI, <br><br> Defendants. | Case No. 1:18-cv-04795-FB-TAM |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO CERTIFY CLASS AND APPOINT CLASS COUNSEL**

Lee Litigation Group, PLLC
C. K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITES …………………………………………………………ii

INTRODUCTION……………………………………………………………………1

ARGUMENT ………………………………………………………………………..2

I.    FAILURE TO PAY SPREAD-OF-HOURS PREMIUMS………..………………2

II.   UNLAWFUL ROUNDING……………………………………………………4

III.  FAILURE TO PROVIDE WAGE STATEMENTS …………………………...6

IV.  FAILURE TO PROVIDE WAGE NOTICES ………………………………………7

V.   VIOLATIONS AGAINST THE TIPPED SUBCLASS …………………………9

VI.  OTHER CONSIDERATIONS…………………………………………………10

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ................................................................................................ 7

*Bondi v. New Rochelle Hotel Assocs.*,
   17-cv-5681, 2018 U.S. Dist. LEXIS 209005 (S.D.N.Y. Dec. 7, 2018) ..................................... 1

*Jeong Woo Kim v. 511 E. 5th St., LLC*,
   133 F. Supp. 3d 654 (S.D.N.Y. 2015) ...................................................................... 8

*Khereed v. W. 12th St. Rest. Grp. LLC*,
   No. 15-CV-1363 (PKC), 2016 WL 590233 (S.D.N.Y. Feb. 11, 2016) ..................................... 9

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   721 F.3d 54 (2nd Cir. 2013) ................................................................................. 6

*Schoenholtz v. Doniger*,
   657 F. Supp. 899 (S.D.N.Y. 1987) ........................................................................ 6

*Yu G. Ke v. Saigon Grill, Inc.*,
   595 F. Supp. 2d 240 (S.D.N.Y. 2008) ..................................................................... 7

**REGULATIONS**

12 N.Y.C.R.R. § 146-2.2 ............................................................................................. 9

12 N.Y.C.R.R. § 146-2.3 ......................................................................................... 6, 7

## INTRODUCTION

Plaintiff submits this Reply Memorandum in response to Defendants' Opposition ("Def. Opp.") to his Motion to Certify Class and Appoint Class Counsel ("Pf. Mem." or "Memorandum"), served on Defendants on July 30, 2021. The fundamental flaw in all of Defendants' arguments is betrayed by their specious claim that the instant action "is virtually identical" to *Bondi v. New Rochelle Hotel Assocs.*, 17-cv-5681, 2018 U.S. Dist. LEXIS 209005 (S.D.N.Y. Dec. 7, 2018), where the court declined to certify a wage and hour class on the following grounds:

> In this case, … the Named Plaintiffs have failed to offer sufficient evidence that the alleged illegal plans or policies of Defendants were uniformly applied to all class members. Plaintiffs have not demonstrated that Defendants implemented an explicit policy to deny compensation to their employees, and the anecdotal evidence submitted by Plaintiffs also lacks sufficient detail to enable this Court to conclude that Defendants implemented a common de facto policy. The declarations provided by Plaintiffs in support of their motion are conclusory and lack the kind of precision and detail from which the Court might infer a uniform policy on the part of Defendants to deny compensation to their employees. While the Named Plaintiffs may not have individually received a tip-credit notice, spread-of-hours premium, the proper amount of tips, or the required statutory wage notices, they fail to show a "common policy."
>
> Similar to *Fernandez*, the anecdotal evidence in this case is insufficient. The declarations here are devoid of information such as the names of other class members, conversations that the Named Plaintiffs may have had with putative class members, or any details that demonstrate that the individual grievances of the Named Plaintiffs were shared by others. Additionally, besides the declarations provided, there is no deposition or other testimony that has come to light to enable the Court to determine whether the Named Plaintiffs' claims are common and/or typical of the class.

Def. Opp. at 20 (quoting *Id.* at 48-49).

In fact, the above case highlights why the Court *should* certify the instant action as a class action, because the evidence amassed by Plaintiff here is much more substantial than in *Bondi*. The declarations there were "devoid of information such as the names of other class members, conversations that the Named Plaintiffs may have had with putative class members, or any details that demonstrate that the individual grievances of the Named Plaintiffs were shared by others." In

1

contrast, Plaintiff Avila has named twelve (12) coworkers who can attest to the same wage and hour violations he suffered. Declaration of Gregorio Velasco Avila ("Avila Decl.") ¶¶ 18-19. Plaintiff also relates conservations with four (4) of these coworkers regarding Defendants' wage and hour violations. Avila Decl. ¶¶ 20-22.

The *Bondi* Court further noted that there was "no deposition or other testimony that has come to light to enable the Court to determine whether the Named Plaintiffs' claims are common and/or typical of the class." But, here, Plaintiff has adduced ample deposition testimony to this effect. This includes (1) C. Skenderi's testimony that she sets a uniform wage policy for both the Bayside and Astoria locations, Pf. Mem. at 5, 26; (2) Mr. Kefaliakos's testimony that he is unfamiliar with the concepts of a "tip credit" or a "spread of hours," Pf. Mem. at 11; (3) Mr. Kefaliakos's testimony that Defendants treated Plaintiff Avila no differently than any other employee. Pf. Mem. at 26.

Most importantly, the *Bondi* Court judged that the plaintiffs' case was inadequate because it relied solely on anecdotal evidence. But that is not so here. As shown in Plaintiff's Memorandum and reiterated below, *Defendants' own documents* conclusively prove that they failed to pay Class members their spread-of-hours premiums and unlawfully rounded down their hours. In short, all of Defendants' arguments require them to simply ignore the evidence that Plaintiff has actually proffered. Once that evidence is highlighted, the frivolity of Defendants' position becomes apparent.

## ARGUMENT

### I. FAILURE TO PAY SPREAD-OF-HOURS PREMIUMS

Defendants assert that Plaintiff's allegation that they failed to pay Class members spread-of-hours premiums is "based upon a bare-bones conclusory affidavit" and that "Plaintiff has not identified any instance in which other employees at TK Astoria worked in excess of 10 hours but

2

did not "receive the 'spread of hours' premium." Def. Opp. at 20-21. But Defendants' claims here are flatly contradicted by Avila Decl., Exhibits B, C, D, and E. As detailed in that Declaration and in the Memorandum, these time sheets demonstrate that *not only Plaintiff* but also other Class members regularly worked shifts lasting longer than ten hours without receiving spread-of-hours premiums.

Defendants believe that Plaintiff's recollection that he worked longer than most other employees at the Astoria location somehow undercuts his ability to represent other employees with spread-of-hours claims. *See* Def. Mem. at 21. But that is a non-sequitur, since Plaintiff need only show that there were others who worked shifts longer than ten hours without receiving premiums, even if these shifts happened to be shorter than his own even longer shifts.

To be sure, the documents produced by Defendants represent only a portion of the total record, since Defendants did not produce timesheets for the entire Class. Even so, the timesheets in Avila Decl., Exhibits B-E reveals that the same violations were suffered by other Class members whose names are alphabetically adjacent to Plaintiff's. That these inadvertent disclosures by Defendants have confirmed Plaintiff's class claims is telling, because it took only a very small sampling of other employees' records to expose more violations. The pervasive nature of the violations is further revealed by Defendants' payroll records, which do not even contain an entry for spread-of-hours premiums.

It is also corroborated by Mr. Kefaliakos's confession that he was unfamiliar with the concept of a spread-of-hours premium—and this from someone who *worked at all three of Defendants' locations and was a manager at two*. Pf. Mem. at 11. Defendants characterize Mr. Kefaliakos as testifying that neither he nor anyone else worked 10-hour shifts. *See* Opp. Mem. at 6. This is plainly false, since, having been asked about this, he responded, "I wasn't really looking

3

around to see what others are doing." *See* Pf. Mem. at 11. Even if Defendants' characterization of Mr. Kefaliakos's statements were accurate, these would deserve no attention, since they would be flatly contradicted by Avila Decl., Exhibits B-E, which plainly show a number of employees, and not just Plaintiff, working shifts longer than 10 hours. Moreover, it is implausible that Defendants would have programmed their payroll system to pay the premium to some employees but not to others. At any rate, Defendants could not have paid spread-of-hours premiums when they do not even know what these are, as Mr. Kefaliakos confirmed.

## II. UNLAWFUL ROUNDING

Defendants respond to Plaintiff's allegation that he and Class members were time-shaved through the unlawful rounding down of hours by repeatedly stressing that the rounding in Avila Decl., Exhibits B-E, reveals a lawful rounding policy. *See* Def. Mem. at 22. This is a distraction, however, since Plaintiff alleges that the rounding that transpired *prior to July 2016* was unlawful. And this, as explained in Plaintiff's Memorandum, is proved by Avila Decl., Exhibit A, which shows *all employees* being paid in *whole hours*, which is per se unlawful under NYLL given New York State's long-standing policy of following 29 C.F.R. § 785.48(b).[1] This inconvenient fact, entirely disregarded in Defendants' Opposition, belies their assertion that their policy has always been to round neutrally to the nearest 15-minute increment. *See* Def. Mem. at 22.

Such may describe Defendants' rounding post-June 2016, but it strains credulity that such a policy could have yielded the glaring results documented in Avila Decl., Exhibit A, where the rounding yielded only whole hours for week after week and year after year. Defendants claim that they began rounding neutrally to the nearest quarter-hour as early as 2013, *see* Def. Opp. at 9. But as shown by Avila Decl., Exhibit B-E, the timesheets produced by Defendants reveal that this

---

[1] *See* https://statistics.labor.ny.gov/legal/counsel/pdf/Other/RO-09-0129%20-%20Rounding%20of%20Time.pdf

4

policy was instituted no earlier than mid- or late-2016, and Mr. Kefaliakos testified that there was no punch-in system at the Manhattan location when he worked there as a manager between 2013 and 2016. *See* Pf. Mem. at 8 n.1.

Recognizing these obvious problems, Defendants desperately argue that Plaintiff's allegation that he and Class members were unlawfully rounded down prior to June 2016 is inconsistent with his claim that he was paid by the shift during that period. Opp. Mem. at 23. This supposed contradiction, Defendants argue, make Plaintiff an unsuitable Class representative, since he claims to have been paid differently than other Class members. This argument is unavailing for two reasons. *First*, Defendants do not argue that Plaintiff was *in fact* paid differently than were other Class members. On the contrary, they assert that "nobody (including Plaintiff) was paid at a flat rate per shift." Def. Mem. at 2. Thus, Defendants concede that there is no *actual* impediment to satisfying the typically and commonality and predominance requirements. And this concession is corroborated by Avila Decl., Exhibit A, which shows Class members being *uniformly* paid in whole hours, as discussed above and in the Memorandum.

*Second*, as to Plaintiff's perception that he was being paid by the shift, any confusion on his part is readily forgivable given that *Defendants never provided him with any documents confirming that he was being paid by the hour*. While Defendants' Exhibit D contains a smattering of wage notices dispensed at the Astoria location in February 2016, it does not contain *Plaintiff's wage notice* (more on these below). Nor have Defendants produced any wage statements given to Plaintiff (or anyone else for that matter, as also discussed below) that would have informed him that he was being paid by the hour. That Defendants kept no timesheets for employees prior to June 2016 (other than the weekly aggregations in Avila Decl., Exhibit A) and paid employees in cash also until then may also have contributed to Plaintiff's perception that he was being paid by

5

the shift.

In short, to the extent Plaintiff was confused about how he was being paid, that is the direct outcome of Defendants' violations and poor record-keeping, which should not now inure to their benefit. *See Schoenholtz v. Doniger*, 657 F. Supp. 899, 909 (S.D.N.Y. 1987) ("To allow this defense would be to allow defendants to profit from their own wrong"); *Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 63 (2nd Cir. 2013) ("The principle that a wrongdoer should not profit from his own misconduct is . . . strong in New York") (internal quotes and citation omitted). The bottom line is that any potential confusion by Plaintiff has no bearing on the legal merits of his allegations. Plaintiff knew he and others were not being properly paid for all hours worked, and this recollection has been corroborated, not refuted, by Defendants' own documentary production, which merely clarified the specific mechanism through which Class members were time-shaved.

### III.  FAILURE TO PROVIDE WAGE STATEMENTS

Defendants claim that "during discovery, Plaintiff sought sample payroll records (wage statements) and wage notices from the TK Astoria and TK Bayside locations, and was provided those records." Def. Opp. at 14. Defendants did indeed provide Plaintiff with "sample payroll records." Hence, Exhibits A-E of his Declaration, which expose the spread-of-hours and rounding violations addressed above. But maintaining such records is not the same thing as fulfilling one's legal obligation under the Wage Theft Prevention Act ("WTPA") to provide employees with paystubs listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; regular hourly pay rate; overtime hourly pay rate; hours worked; gross wages; credits claimed for tips, meals, and lodging; deductions; and net wages. *See* N.Y. LAB. L. § 195-3; 12 N.Y.C.R.R. § 146-2.3.

As stated in his Declaration, Plaintiff's recollection is that he and other Class members did

6

not receive proper wage statements, a contention that Plaintiff declares can be supported by the testimony of many coworkers, whom he names. And the bottom line is that Defendants offer the Court nothing that would rebut these recollections, as is their burden. Defendants' Exhibits D and E contain wage *notices* (discussed below), but no wage *statements*. And "[i]n the absence of documentation, the employee may rely on [their] own recollection to meet [their] initial burden, in which case the employer must proffer evidence sufficient to rebut that recollection." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

Moreover, there is ample reason beyond Plaintiff's unrebutted recollections to infer that Defendants failed to provide him and Class members with proper wage statements. As Plaintiff notes in his Declaration ¶ 13, Defendants' payroll records indicate that Class members were misclassified as independent contractors to be issued 1099 forms, which surely supports the inference that any wage statements they might have received did not satisfy the strictures of N.Y. LAB. L. § 195-3; 12 N.Y.C.R.R. § 146-2.3. That Defendants did not employ a proper clock-in system and paid in cash until after June 2016 makes it doubly plausible that Class members did not receive proper wage statements. Indeed, the record to date strongly suggests that Defendants simply estimated the time Class members had worked, rounded this time down to the nearest whole hour, and then paid the corresponding sum in cash without bothering with wage statements.

### IV.     FAILURE TO PROVIDE WAGE NOTICES

As with his wage statement allegations, Plaintiff is entitled to rely on his recollections that he and Class members did not receive proper wage notices, and it is Defendants' burden to rebut those recollections, as the "employer has the burden of proving compliance" with the wage notice requirement. 12 N.Y.C.R.R. § 146-2.2(d). As they did not with Plaintiff's wage statement

7

allegations, Defendants do in fact attempt to prove their compliance by means of Exhibits D and E, which contain a smattering of wage notices from the Astoria and Bayside locations, respectively. But, alas, that attempt fails for several reasons.

First, it bears emphasis that these exhibits are not accompanied by any declaration that would vouch for their authenticity or properly contextualize them. Defendants do not provide the Court with any information that would allow it to determine whether the notices are representative of Defendants' practices. They do not provide a list of all Class members in order to systematically explain who exactly received what and when. For all we know, the samplings in Exhibits D and E could be outliers. Indeed, all of the Astoria notices in Exhibit D are dated around February 2016, so they scarcely prove that each Class member was provided with a notice *upon hiring*, as is required under NYLL. *See Jeong Woo Kim v. 511 E. 5th St., LLC*, 133 F. Supp. 3d 654, 662 (S.D.N.Y. 2015) ("an employer must furnish such a wage notice to an employee at the time of hiring."). To the contrary, that Defendants' wage notices are limited to one month in 2016 betrays that it was *not* their policy to provide wage notices at the legally mandated time (whenever anyone was hired or their wage changed). Indeed, only *two* of the wage notices in Exhibit D indicate that they were provided "At hiring," and these two happen to be deficient, as they do not even contain the employer's name (which is also true of other wage notices in Defendants' Exhibit D).

A larger proportion of the Bayside wage notices in Defendants' Exhibit E state that they were provided "At hiring." But, again, Defendants provide no contextualizing information by which the Court could evaluate how representative these notices are, and so answering this question will have to await trial. Even if it were determined that Class members at Bayside, unlike those at Astoria, received proper wage notices, this difference would not defeat certification, since there would be no serious administrative obstacle to providing such additional damages as are

8

warranted to Astoria and Manhattan workers alone.

## V.  VIOLATIONS AGAINST THE TIPPED SUBCLASS

Plaintiff states that he and other tipped employees of Defendants never received proper tip notices and lists the names of numerous co-workers who can corroborate his recollections. Here, too, Defendants have said nothing to rebut those recollections, notwithstanding that "[t]he employer has the burden of proving compliance with the notification provisions of this section." 12 N.Y.C.R.R. § 146-2.2(d). As discussed above, many of the wage notices produced by Defendants are defective because they do not state any employer information, and Defendants give the Court no reason to believe that those that are not facially defective were issued at the legally mandated time. But even if all the wage notices had been proper, they still would not qualify as a proper tip credit notice, since they do not alert employees that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-2.2. It bears emphasis that Defendants have not even responded to Plaintiff's argument that the tip credit taken from him and other Tipped SubClass members was invalid because they spent over 20% of their time on non-tipped activities. See Pf. Mem. at 14.

Further, the WTPA requires that wage statements "expressly identify the per-hour amount of a tip credit and the total amount of the tip-credit allowance." *Khereed v. West 12th St. Rest. Grp. LLC*, 2016 U.S. Dist. LEXIS 16893, *10, 2016 WL 590233 (S.D.N.Y. Feb. 11, 2016) ("section 195(3) has been interpreted to require a wage statement to. But Defendants have not produced any wage statements at all (which, again, are distinct from "payroll records"), so the Court must presume that Defendants have violated this requirement as well.

## VI.  OTHER CONSIDERATIONS

Defendants would attach great importance to the fact that Plaintiff never worked at the Bayside or Manhattan locations. This, Defendants believe, precludes him from asserting that

9

employees at those locations were subject to the same wage and hour violations as him. *See* Opp. Mem. at 3. But, as noted above, C. Skenderi testified that she set uniform wage policies for both Astoria and Bayside. Lee Decl., **Exhibit G**, C. Skenderi Dep. 60:19-23 (Pf's Mem. at 5). And the record also demonstrates that A. Skenderi exercised power at all three locations. Lee Decl., **Exhibit F**, A. Skenderi Dep. 21:3-14, 14:5-14, 14:25-15:4 (Pf. Mem. at 4-5).

Thus, the Court does not require an eyewitness account from Plaintiff to conclude that employees at all locations were subject to the same policies. While Defendants claim that Plaintiff presents no evidence as to the Manhattan location, Mr. Kefalioakos, who was a *manager* there for *three years*, confirmed that he was unacquainted with the very concept of a "spread of hours" or a "tip credit." *See* Pf. Mem. at 11. So, it is no great leap to infer that the same unlawful policies encountered by Plaintiff in Astoria were also operative in Manhattan. At any rate, Plaintiff can demonstrate numerosity on the basis of the Astoria and Bayside locations alone, given (1) the number of employees there, (2) the turnover, and (3) the length of the Class period, which begins in 2012. *See* Pf. Mem. at 20.

Defendants also argue that Plaintiff is unfit to represent the Class because he claims to have worked "off the books" while other employees worked "on the books." *See* Def. Mem. at 17. But given Defendants' inability to produce wage statements, the record makes clear that, up until mid-2016, *no one* was working "on the books" except inasmuch as Defendants kept lists of each employee's purported aggregate weekly hours (always in whole hours), as shown in Avila Decl., Exhibit A. There is, therefore, no difference—or conflict—between Plaintiff and Class members that would prevent him from representing them.

Dated: New York, New York

September 17, 2021

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff and the Class*