UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
GREGORIO VELASCO AVILA, on
behalf of himself, FLSA Collective
Plaintiffs and the Class,

                Plaintiff,

     -against-

ARDIAN CORP. d/b/a TAVERNA
KYCLADES, MACCG LLC d/b/a
TAVERNA KYCLADES, TK BELL
LLC d/b/a TAVERNA KYCLADES,
ARDIAN SKENDERI, and CATERINA
SKENDERI,

               Defendants.
-----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 18-CV-4795-FB-TAM

*Appearances:*
*For the Plaintiff:*
C.K. LEE
ANNE SEELIG
Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, New York 10011

*For the Defendants:*
VINCENT AVERY
FordHarrison, LLP
366 Madison Avenue, Seventh Floor
New York, New York 10017

**BLOCK, Senior District Judge:**

      Gregorio Velasco Avila worked at the Taverna Kyclades restaurant in Astoria,

Queens ("TK-Astoria").   He alleges that his former employer failed to pay him in

accordance with the federal Fair Labor Standards Act and the New York Labor Law.

      With respect to the state-law claims, Avila seeks to represent a class consisting

1

of "all former and current non-exempt workers (including, but not limited to, cooks, line-cooks, food preparers, dishwashers, porters, counter attendants, cashiers, servers, bussers, hosts, baristas, and delivery workers) employed at any of Defendants' three (3) Taverna Kyclades locations at any time between August 23, 2012, and the certification of this class," as well as a subclass consisting of "all tipped employees employed at any of Defendants' three (3) Taverna Kyclades locations at any time between August 23, 2012, and the certification of this class." Pl's. Mem. of Law 2.   Accordingly, he moves to certify that proposed class and subclass pursuant to Federal Rule of Civil Procedure 23.   For the following reasons, the motion is denied.

# I

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).   Rather, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"   *Id*. at 350-51 (quoting *Gen'l Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)).   "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."   *Id*. at 351.   The following factual background is presented with those standards in mind.

Avila was hired as a busboy in 2009.   For the next seven years, he typically worked six days a week.   On Tuesdays, he worked a single, 8.5-hour shift from 5 p.m. to 12:30 a.m.   On Mondays, Wednesdays, Thursdays, Saturdays and Sundays, he worked a double shift of 14.5 hours—11 a.m. to 1:30 a.m.—with a one-hour break between shifts.   During this period, he was not required to clock in or out; he was paid in cash at the tipped minimum wage.

TK-Astoria began using a time clock in June 2016.   From then until the end of his employment in May 2017, Avila worked five or six days a week.   He worked shifts of seven to nine hours, but would occasionally work more than ten hours a day.   During this period, he earned between $7.50 and $11.00 an hour, which was equal to or greater than the tipped minimum wage.

While conceding that he received at least the tipped minimum wage throughout his employment, Avila claims that TK-Astoria violated the New York Labor Law in five ways.   First, he claims that he was not paid for all hours worked because TK-Astoria systematically rounded down his hours.   Second, he claims that he never received a spread-of-hours premium when he worked more than ten hours in a day.   Third, he claims that he never received wage statements (i.e., paystubs). Fourth, he claims that never received wage notices.   Fifth, he claims that he was entitled to be paid at the regular minimum wage—as opposed to the tipped minimum

3

wage—because TK-Astoria did not give him proper wage notices and because he spent more than 20% of his time on non-tipped activities.

## II

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of [Federal Rule of Civil Procedure] 23(a) of numerosity, commonality, typicality, and adequacy." *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).   "It may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).   Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234 (2013).

It is helpful at the outset to recall the purpose behind these "stringent requirements."   The Supreme Court's decision in *Dukes* provides a concise summary:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.   In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same

> injury as the class members.   Rule 23(a) ensures that the named
> plaintiffs are appropriate representatives of the class whose claims they
> wish to litigate.   The Rule's four requirements—numerosity,
> commonality, typicality, and adequate representation—effectively
> limit the class claims to those fairly encompassed by the named
> plaintiff's claims.

564 U.S. at 348-49 (citations and internal quotation marks omitted).

## A.   Rule 23(a)(1): Numerosity

A proposed class of more than 40 members presumptively satisfies the numerosity requirement.   *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).   Avila recalls that TK-Astoria employed "approximately 30 individuals."   Avila Decl. ¶ 23.   He attempts to bridge the gap to 40 by arguing that employees of two other Taverna Kyclades restaurants—one in Bayside, Queens ("TK-Bayside"), and one in the East Village ("TK-Manhattan")—should be included in the count, bringing the total number of employees to around 90.   Defendants object that Avila's proposal does not account for possible difference in pay practices, but Caterina Skenderi, a co-owner of all three locations, stated that she was "the person who sets the wage policies" for Taverna Kyclades.   *See* C. Skenderi Dep. 60.   Given this undisputed evidence of uniform pay practices, the Court will consider employees at all three locations.

It does not suffice, however, for Avila to show that the raw number of employees was more than 40.   What is relevant is the number of employees that were

5

subject to the same violations of the New York Labor Law as he was.

Of Avila's five claims, there is sufficient evidence of numerosity with respect to three.   Defendants' own payroll records reveal that employees were uniformly paid in whole-hour increments until a time-clock was introduced in June 2016. Those same records reflect that no employee ever received a spread-of-hours premium, and that defendants never recorded a tip credit for tipped employees. Based on these records, the Court finds that the number of proposed class members is likely to exceed forty on those claims.

By contrast, the evidence of numerosity is insufficient on Avila's wage statement and wage notice claims.   For those claims, the records provided by defendants reflect that many employees did receive the required documents.   Avila has no personal knowledge of facts to dispute those records.   *See* Avila Dep. 46-47 ("Q. Do you know if other employees received wage notices?   A. No.").   "Where the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails."   *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y. 2001).

In sum, the Court holds that Avila's wage statement and wage notice claims fail the numerosity requirement of Rule 23(a)(1).

**B.   Rule 23(a)(2) and (3): Commonality/Typicality**

6

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class."   Rule 23(a)(3) requires a plaintiff to show that his or her claims "are typical of the claims . . . of the class."   The commonality and typicality requirements "tend to merge" into a single inquiry: "[W]hether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."   *Dukes*, 564 U.S. at 349 n.5 (quoting *Falcon*, 457 U.S. at 157 n.13).

The commonality/typicality test has traditionally been described as "easily satisfied" by a single common issue.   5 James Wm. Moore et al., *Moore's Federal Practice* § 23.23[2] (3d ed. 1997); *see also* 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3.10 (4th ed. 2002) ("[T]here need only be a single issue common to all members of the class.   Therefore, this requirement is easily met in most cases." (footnotes omitted)).

That said, not just any issue will suffice.   "[A]ny competently crafted class complaint literally raises common questions."   *Dukes*, 564 U.S. at 349 (citation and internal quotation marks omitted).   To obtain class certification, the plaintiff must demonstrate that "the class members 'have suffered the same injury.'"   *Id.* (quoting *Falcon*, 457 U.S. at 157).   "This does not mean merely that they have all suffered a violation of the same provision of law."   *Id.*   Rather, the class claims "must depend

upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Avila proposes a number of common issues, but each reflects a fundamental misunderstanding of the commonality and typicality requirements because each asks what defendants did or did not do to "employees" (or "Class and Subclass members"). Pl.'s Mem. of Law 22.  To warrant class certification, the *named plaintiff's* claim must have an issue in common with the claim of the other class members.  How defendants treated its "employees" is simply not an issue on Avila's claims. Consider how one of those claims would unfold at trial.  On Avila's claim that defendants systemically rounded down his hours, the factfinder would be asked to determine (a) how many hours *Avila* actually worked in a particular week, and (b) how many hours he much *he* was paid for that week.   The answers to those questions would not necessarily resolve the claims of any other class member.

Despite Avila's phrasing, however, the facts of this case suggest common questions because there is evidence that Avila's claims arise out of generally applicable pay policies.  His rounding claim is based on the lack of time clock; his tip credit and spread-of-hours claims, on a general failure to understand or follow the legal requirements for tipped employees or employees who worked more than ten

8

hours in a day.   It is, therefore, likely that Avila's claimed injuries were suffered by other class members.

In that sense, Avila's claims are akin to a claim that an employer misclassified employees.   In *Cuevas v. Citizens Financial Group, Inc.*, 283 F.R.D. 95 (E.D.N.Y. 2012), for example, the plaintiff claimed that the defendant improperly classified its assistant bank managers as exempt employees.   *See id.* at 96.   The district court concluded that the classification presented a common question, notwithstanding a factual dispute as to variations in job duties.   *See id.* at 98.   The Second Circuit vacated on the ground that a determination as to class certification required resolving that dispute.   *See Cuevas v. Citizens Fin. Group, Inc.*, 2013 WL 2321426, at *2 (2d Cir. May 29, 2013) (summary order).   It noted, however, that misclassification of employees as exempt is appropriate for classwide resolution as long as there is adequate evidence that the class members' jobs "were similar in ways material to the establishment of exemption criteria."   *Id.* at *3 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)).

For these reasons, the Court holds that Avila's rounding, spread-of-hours, and tip credit claims present common issues, and that Avila's claims are typical of those of other members of the proposed class.

**C.     Rule 23(a)(4): Adequacy**

The adequacy requirement of Rule 23(a)(4) is satisfied if "(1) plaintiff's interests are [not] antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, *Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Defendants do not seriously dispute that Avila and his counsel can adequately protect the interests of absent class members.   In any event, the typicality of Avila's claims is "strong evidence that [his] interests are not antagonistic to those of the class [and that] the same strategies that will vindicate [his] claims will vindicate those of the class."   *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008).   He is represented by attorneys with extensive experience with class actions in general, and wage-and-hour class actions in particular.

**D.     Predominance**

Having satisfied the four prerequisites of Rule 23(a)—at least with respect to some of his claims—Avila must also satisfy Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   That inquiry seeks to identify cases "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly

10

situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citation, internal quotation marks and alteration omitted).   And while similar to the commonality requirement, the predominance requirement is "more demanding" because it requires that the common issues be "more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002).[1]

Although the Court has identified issues common to both Avila and the proposed class, those issues pale in comparison to the individual issues that would arise were the case to proceed as a class action.   As a result, the class-action mechanism is not a superior means of adjudicating this case.

Recall again how the case might unfold at trial.   Avila establishes that defendants' practice of rounding down resulted in an underpayment of wages, that he was entitled to be paid at the regular minimum wage instead of the tipped minimum

---

[1]*Dukes* holds that the common issue(s) must be "central" to the class members' claims.   564 U.S. at 350.   In her dissenting opinion, Justice Ginsburg objected that the majority "imports into the Rule 23(a) determination concerns properly addressed in a Rule 23(b)(3) assessment." *Id.* at 368 (Ginsburg, J., dissenting).   In this case, the dispute between the majority and the dissent is little more than semantics.   Whether termed a question of "centrality" under Rule 23(a), or of "predominance" under Rule 23(b)(3), the Court must weigh common issues against individualized ones.

wage, and that he worked more than ten hours a day on several occasions without being paid the spread-of-hours premium.   He then establishes that those violations of the New York Labor Law caused him, say, $5,000 in damages.

What happens next?   Surely the Court would not simply award each class member $5,000.   Rather, each class member would have to come forward and establish how many hours he or she worked, how much he or she was paid, and how much of his or her work was spent on non-tipped activities.   Defendants would be entitled to contest each of these issues with respect to each class member.

That would be more than an individualized inquiry into the amount of damages for a common injury; it would be a mini-trial on each class member's claims.   The case would, in other words, unfold precisely as it would without class certification and would, therefore, achieve no "economies of time, effort, and expense."   *Amchem*, 521 U.S. at 615.

### III

In sum, the Court concludes that Avila has failed to satisfy the numerosity requirement of Rule 23(a)(1) with respect to his wage statement and wage notice claims, and that he has failed to satisfy the predominance requirement of Rule 23(b)(3) with respect to his remaining claims.   Accordingly, the motion for class certification is denied.   This decision has no bearing on any of Avila's individual

12

claims, or on ability to pursue his claims under the FLSA as a collective action.

**SO ORDERED.**

                                        \_\_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 16, 2022

13